CITY OF KNOXVILLE v. CAMPER. NO. 7.—108 S. W. (2d), 787.

Eastern Section.    July 3, 1937.

Petition for Certiorari denied by Supreme Court, October 2, 1937.

Wayne Parkey, of Knoxville, for plaintiff in error.
S. E. Hodges, of Knoxville, for defendant in error.

AILOR, J.   This is an action to recover damages for personal injuries sustained by Melvina Camper, suing by her next friend, Grover Camper.   It was commenced by the issuance and service of summons from the Second circuit court of Knox county, where a trial by the court and jury resulted in a verdict and judgment in the amount of $800.   The City of Knoxville has appealed in error to this court, and has assigned errors herein.   For convenience the parties will be referred to in this opinion in the order of their appearance in the court below.

The plaintiff is a minor about seven years of age and slightly handicapped in her walk by reason of the result of infantile paralysis which she had while an infant.   On the 16th day of May, 1936, at about 8 o'clock a. m., plaintiff was starting to return to her home from a store located on East Main street, in the City of Knoxville, and operated by a man by the name of J. H. Browning, where she had purchased a piece of candy.   When she emerged from the store, she was in the act of opening her package of candy, and, while walking upon Main street near the southeast corner of the intersection of said Main avenue and Lane street, she lost her footing

in some manner and fell into a large and rather deep hole near the junction of said two streets, or between the used portion thereof and the sidewalk. As a result of the fall the right arm of plaintiff was broken, and the left arm severely bruised, so that she was compelled to go to a hospital for treatment. She remained in the hospital for eleven days, and was inclosed in a cast from her arms to her hips.

The declaration charged that the maintenance of the hole in question by the defendant constituted an active nuisance; that it had existed for many years prior to the happening of the accident and injury, and that the defendant had both constructive and actual knowledge of its existence and condition; that it had negligently failed to inspect said dangerous condition and take reasonable steps to remedy the condition; and that the said negligence of the defendant was the prime and proximate cause of the injury suffered by the plaintiff, which it was alleged was permanent.

J. H. Browning operates a store at 128 East Main street in the City of Knoxville. The front of the store building is flush with the outer edge of the sidewalk. The sidewalk at this point is 5 feet, possibly slightly more, in width. One exhibit shows it to be 5 feet and 6 inches in width, though some witnesses say it is only about 3 feet in width. The width of the sidewalk is not primarily material. Main street is approximately 30 feet wide at the place of the accident. Mr. Browning had emerged from his store about the same time plaintiff came out, but, by reason of the fact that she was absorbed in opening her package of candy, he had moved on ahead of her, intending to go for his breakfast. When he had progressed up the street a few steps, he heard the impact from her fall into the hole. When he turned around, she was lying in the rut as he called it, the hole, or catch basin as it is variously called in the record. A Mr. Nelson came to the door of the Browning store about the instant Mr. Browning saw the child in the ditch, and, by reason of the fact that he was more alert than Mr. Browning, Mr. Nelson reached the child first. Mr. Browning describes the hole in question as being about 4 feet wide, and as being used as a catch basin to permit surface water to drain from the street. He says that he has seen water there in such quantities that the drainage provided was insufficient to carry it away. The opening or basin was covered with a grating at the deepest point and extending back some distance.

Grover Camper described the hole in question as being 34 inches deep at the deepest place, 29 inches wide at the deepest place, 4 feet 5 inches wide at the upper end, and 30 inches deep at the upper end. We gather from admissions made by him that the portion of the hole he describes as being 34 inches deep is covered with a grating, but the grating only covers a small portion of the hole. His testimony would fix the depth of the hole at the shallowest point at 30 inches, and this is described as being without protection of any

kind. Map filed by Mr. Hale, witness for defendant, indicates the size of the hole left open without grating as 3 feet 5 inches in either width or length and only 1¾ feet deep. But the evidence most favorable to plaintiff must be accepted by us at this time in support of the verdict rendered by the jury. And the conflict between the measurements made and testified to by Mr. Camper and those testified to by Mr. Hale must be resolved in favor of that testified to by Mr. Camper, especially in view of the fact that the measurements appearing on the map are not fully explained.

██ ██ It is insisted now that there was no evidence to support the verdict of the jury, and that the trial judge erred in refusing to direct a verdict and in denying motion for new trial for the same reason. We notice this question first. In urging this defense, defendant relies very largely upon the testimony of Mr. Hal Hale, engineer. His testimony shows that a portion of the drain opening was covered with a slab or grating, or a portion of its slightly over 4 feet in length, and that only slightly more than 3 feet was left open with a depth of slightly less than 2 feet. But, as above indicated, this testimony and the map indicating same is contradicted by the testimony of Mr. Camper. This difference in measurements between that given by Mr. Camper and Mr. Hale may be accounted for by the height of the sidewalk above the street level, but, however this is, we are concluded by the testimony of Mr. Camper.

Mr. Hale testified that the catch basin in question was constructed to care for the surface water from approximately 14 acres territory. He says that the City of Knoxville generally uses open mouth catch basins, especially where conditions are such that the amount of water to be taken care of is so great, or travels so fast, that an ordinary grate basin is not satisfactory. The reasons given by him for not providing grating are that paper, leaves, and other debris gathers on top of the basin and prevents the water from entering into it. Mr. Hale said that this particular type of catch basin was used all over the City of Knoxville; that, as it is now constructed, it would be about 70 per cent, efficient in caring for the water of the area; that the condition complained of could be remedied by the construction of a storm sewer at considerable expense, estimated by him at from between thirty and forty thousand dollars. We are given no light on the question of whether this would be an unreasonable or a reasonable expenditure to remedy the condition complained of.

It further appears that Main street, at the point of the accident, is a heavily traveled thoroughfare by vehicles and pedestrians. From the fact that the accident occurred in front of a store, we would infer that it is within a district at least partially occupied by business establishments. And the number of pedestrians using the sidewalks at this point would largely depend upon the number and character of business enterprises in the vicinity. The proof is con-

fined to showing that it is a heavily traveled district. It would be reasonable to conclude that the condition described would be dangerous in ration to the amount and character of traffic using the street and sidewalk at this point. The conditions described might not be dangerous on a street in a remote section of a town with little travel, while it 'might be a constant menace in a congested and heavily traveled street. The proof is that the City of Knoxville uses this form of catch basin more or less regularly, but proof of this fact is of little value to us, for the reason that the form of the basin does not necessarily determine whether or not it is dangerous. Its location, depth, width, etc., would be the most pertinent factors in determining whether or not it was in fact dangerous to such an extent as would render the city liable to one suffering an injury as a result of its maintenance.

It is insisted on behalf of the city that there is no liability in this case, for the reason that the catch basin in question was constructed in conformity with the plans of the city's engineers; and that whatever defect existed was the result of a mistake in judgment of its engineers. However, it does not appear that the engineer who designed this character of catch basin was a competent engineer. In fact, there is no showing as to who designed this particular catch basin, and, as above indicated, the question of whether or not it is dangerous would be related to the surrounding circumstances, or at least surrounding circumstances would· be matters for consideration in determining its safe or unsafe condition. To say that a showing that the catch basin was constructed in conformity with plans of the engineering department of the city constituted an absolute defense to an action of this time, carried to its finality, would result in a situation where the rule would be that an engineer could do no wrong, and where a condition once established by a competent engineer at the time could not be thereafter adjudged to be dangerous to the extent of rendering the city liable for injury resulting therefrom. We know of no such rule of law, and think that the establishment of same would be a dangerous legal formula. This insistence seems to be answered in the negative by the holding in the case of Nashville v. Sutherland, 94 Tenn., 356, 29 S. W., 228. In that case the engineers for the city constructed a sewer through the lands of the injured party, and it appears that the engineers selected valves designed to hold back the water from the river from backing upon the lands over which the sewer was built. The valves selected by the engineers were not suitable for that purpose, and the city was held liable for the failure of the plans of the engineer to work in such manner as to keep back the rising waters. The rule seems to be that a city is bound to use ordinary care in the construction of its sewer and street systems. Burton v. Chattanooga, 7 Lea 739.

In the case of City of Maryville v. McConkey, 19 Tenn. App.,

520, 90 S. W. (2d), 951, the city was held liable for injuries resulting from plaintiff stepping into a hole left in a grass plat between the sidewalk and the street pavement, it being held that it was a question for the jury to determine whether or not the condition of the hole at that particular point was such as to render the town liable for its existence. This follows the general rule established in this state to the effect that the question of negligence is ordinarily one of fact to be submitted to the jury under proper instructions. Carey Roofing Co. v. Black, 129 Tenn., 30, 164 S. W., 1183, 51 L. R. A. (N. S.), 340.

And it is only in cases where all reasonable men must draw the same conclusion from proven facts that the question of negligence becomes one for the court to determine as a matter of law. Ellis v. Cotton Oil Co., 3 Tenn. Civ. App. (3 Higgins), 642; Memphis Street Railway v. Felts, 6 Tenn. Civ. App. (6 Higgins), 303.

And the same rule is applicable to the question of contributory negligence. I. C. R. R. Co. v. Toombs, 6 Tenn. Civ. App. (6 Higgins), 293.

But the rule barring recovery for contributory negligence does not apply to infants of very tender years. Children under seven years of age are presumed to be incapable of being guilty of contributory negligence, but this may be rebutted and become a question for the jury. Wells v. McNutt, 136 Tenn., 274, 189 S. W., 365.

We think the proof in this case presented a question for determination of the jury. To say that a hole at the edge of a sidewalk in front of a store frequented by children does not present a dangerous situation is, in our minds, a debatable proposition, and, when the facts present a question for debate, it passes into that field of questions peculiarly within the province of the jury to decide. Such is the case before us, and it becomes necessary to overrule assignments of error to the effect that there was no evidence to support the verdict of the jury. In arriving at this conclusion, we are not unmindful of the duty imposed upon municipal corporations to maintain streets and care for surface water. We appreciate the increasing burdens upon the taxpayers of cities, but the legislative bodies have provided machinery for determining questions of liability, and it is the duty of the courts to enforce those rules, when they violate no vested right. And the same result must follow as to assignment of errors to the effect that the contributory negligence of Melvina Camper is a bar to her right of recovery as a matter of law. The capacity of the child to appreciate danger, its intelligence, age, etc., all present questions for the jury to determine under proper instructions. See Townsley v. Cab Co., 145 Tenn., 91, 237 S. W., 58.

The third assignment complains about the action of the trial judge in refusing to give special instruction to the effect that

the city would not be liable, assuming as true all of the facts testified to as to the condition of the catch basin, the sidewalk, etc. This request involved substantially the same questions as the motion for peremptory instructions, and will not be further considered. The assignment will be overruled.

It is next insisted that the judgment is excessive. It is not insisted that the verdict was so excessive as to evince passion, caprice, or other improper motive on the part of the jury. And we have concluded that the same must be overruled. The question of the amount of damages to be allowed is ordinarily for the jury to determine. There is not any dispute as to the extent of the injuries in this case, it is true, but we are not able to say that the amount allowed is excessive. Plaintiff suffered a broken arm, and suffered severe injuries to her other arm. And while we think full compensation was awarded, we are not in position to say that it is excessive. This assignment will be overruled, and the judgment of the lower court affirmed.

Portrum and McAmis, JJ., concur.