WILLIAM R. FINKS, Plaintiff-in-error-Defendant, v.
BERTHA GILLUM, Defendant-in-error-Plaintiff.

WILLIAM R. FINKS, Plaintiff-in-error-Defendant, v.
WILLIAM M. GILLUM, Defendant-in-error-Plaintiff.—
273 S. W. (2d) 722.

Middle Section. August 27, 1954.

Petition for Certiorari denied by Supreme Court, November 16, 1954.

306

308

Waldo E. Rassas and James C. Cunningham, both of Clarksville, for plaintiff in error.

H. B. Stout and Noel R. Bagwell, both of Clarksville, for defendants in error.

HICKERSON, J. Bertha Gillum filed her suit to recover damages for personal injuries which she allegedly received when an automobile in which she was riding was struck from the rear by an automobile which was being driven by William R. Finks.

William M. Gillum, husband of Bertha Gillum, brought his suit against William R. Finks to recover the damages which he suffered from the injuries to his wife. The decision in the Bertha Gillum case will control the decision in the husband's case. If the wife is entitled to recover, the husband is entitled to recover. Wherefore, we shall confine this opinion to the wife's case, for convenience; and let the judgment in the husband's case follow the judgment in the wife's case.

Bertha Gillum alleged that defendant, "carelessly and negligently, heedlessly and recklessly overtook the car in which plaintiff was riding and drove car into and against

the rear end of that car and inflicted upon the plaintiff serious wounds, bruises and abrasions from which she suffered both great physical and mental pain and incurred heavy doctor and hospital expenses. Plaintiff received a violent shock to her nervous system; her back, neck and side were sore from said negligence of the defendant and plaintiff's back was severely injured.

"At the time said injuries were negligently inflicted upon plaintiff she was pregnant and as a direct result of the above stated wrongs and negligence of the defendant, the plaintiff was caused to miscarry and thereby lost her child. As a result thereof, she suffered great physical pain and mental anguish. Plaintiff was permanently injured."

Defendant pleaded the general issue.

The jury found the issues in favor of plaintiff and assessed her damage at $6,750. The damage of her husband was fixed by the jury at $200. The trial judge approved these verdicts and entered judgments based upon them. The defendant, William R. Finks, appealed in error to this Court.

The questions presented by the assignments will be considered and determined in the order in which they appear in the briefs.

(1) We quote the first assignment:

"There is no evidence to support the verdicts of the jury.

"(a) That Mrs. Gillum was pregnant before the accident.

"(b) That Mrs. Gillum ever miscarried.

"(c) That there is no evidence to show that the accident was the direct and proximate cause of any miscarriage by Mrs. Bertha Gillum. Such inference must be by speculation."

 The rules which will govern the consideration of the question made by this assignment are found in the decisions of our appellate courts wherein the court was reviewing the action of the trial court on a motion for directed verdict.

 In Tennessee Central Railway Company v. Mc-Cowan, 28 Tenn. App. 225, 188 S. W. 2d 931, it is said

"Upon the consideration of a motion made by defendant for directed verdict 'plaintiff is entitled to all legitimate inferences of fact favorable to him which may be reasonably drawn from the evidence tending to support the cause of action stated in his declaration,' Prudential Insurance Company v. Davis, 18 Tenn. App. 413, 429, 78 S. W. 2d 358, 368; and 'the trial judge should take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and discard all countervailing evidence,' Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984, 985.

"Facts may be proved by circumstances in civil cases where the circumstances are such as usually attend the fact to be proved, and tend to exclude contrary hypotheses It is not necessary for such circumstances to exclude all other hypotheses. It is sufficient if one theory is more probable than other theories from the circumstances proved; and it is a question for the jury to decide which theory or hypothesis is the more probable. The question is determined upon a preponderance of the evidence which is submitted by proving the circumstances. Knights of Pythias v. Steele, 107 Tenn. 1, 63 S. W. 1126; Marquet v. Aetna Life Ins. Co., 128 Tenn. 213, 159 S. W. 733, L. R. A. 1915B, 749, Ann. Cas. 1915B, 677; Gulf Re-

fining Co. v. Frazier, 19 Tenn. App. 76, 83 S. W. 2d 285; Nashville Railway & Light Co. v. Harrison, 5 Tenn. App. 22, 34-36.''

Phillips v. Newport, 28 Tenn. App. 187, 187 S. W. (2d) 965, 971, held:

''Any fact may be proved by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. In civil cases facts are proved by a preponderance of the evidence. If unequal conflicting probabilities, or unequal inconsistent theories are shown by the evidence; or if the minds of reasonable men might differ from the proved facts as to whether the conflicting probabilities or inconsistent theories, are equally supported by the evidence, the case must go to the jury. Law v. Louisville, etc., Railroad Co., 179 Tenn. 687, 699, 170 S. W. 2d 360; New York Life Insurance Company v. Nashville Trust Co., 178 Tenn. 437, 159 S. W. 2d 81; Bryan v. Aetna Life Insurance Co., 174 Tenn. 602, 130 S. W. 2d 85; Knights of Pythias v. Steele, 107 Tenn. 1, 63 S. W. 1126; Pickard v. Berryman, 24 Tenn. App. 263, 142 S. W. 2d 764; Gifford v. Provident Life Insurance Co., 16 Tenn. App. 21, 64 S. W. 2d 64; Jones Commentaries on Evidence, Second Edition, Revised and Enlarged, page 23, section 12.

''The trial judge should direct a verdict for defendant, and hold as a matter of law that there is no evidence to support the verdict when the proved facts and circumstances give equal support to the inconsistent theories of plaintiff and defendant. Law v. Louisville, etc. Railroad Co. supra; Pennsylvania Railroad Co. v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. Ed. 819.

"But in considering whether the proved facts and circumstances give equal support to the inconsistent theories of plaintiff and defendant, or whether equal probabilities exist in relation to such theories, upon a motion to direct a verdict for defendant, the court must be governed by the general fundamental rule in regard to directing verdicts, to-wit: if the minds of reasonable men must reach a conclusion adverse to plaintiff, from all the facts and circumstances shown, upon an issue which is fatal to plaintiff's cause of action, the court should hold as a matter of law that plaintiff has not made out his case, and direct a verdict for defendant. Hines v. Partridge, 144 Tenn. 219, 231 S. W. 16; Patillo v. Gambill, 22 Tenn. App. 485, 124 S. W. 2d 272."

Morgan v. Tennessee Central Railway Company, 31 Tenn. App. 409, 216 S. W. (2d) 32, 37:

"Defendant had the constitutional right to have all issues of fact decided by a jury if the evidence was in conflict on the issues. Constitution of Tennessee, Article 1, Section 6, and Article VI, Section 9.

"The driver of the car was strongly contradicted by defendant's witnesses on other material issues. But the jury found these other issues in favor of plaintiff, thereby showing they believed the testimony of the driver of the car on these other issues, and did not believe the testimony of defendant's witnesses.

"If a witness is discredited by the jury on one material issue about which there is a conflict in the testimony, it is within the province of the jury to discredit the witness on any or all other material issues in the case, although there is no conflict in the evidence as to such other issues. The rule is based upon

the maxim, 'false in one, false in all'; and upon the fundamental principle of evidence that the jury must determine the credibility of witnesses, not the judge. Frank v. Wright, 140 Tenn. 535, 205 ,S. W. 434; Wright v. Bridges, 16 Tenn. App. 576, 65 S. W. 2d 265.

"We think this rule should be further extended so as to protect the constitutional right of trial by jury. We hold the correct rule to be: Several facts must be proved by a plaintiff to make out his case. He relies upon the testimony of one witness to prove the facts. That witness is contradicted by the evidence on one material issue, but is not contradicted on the other issues. The trial judge has no constitutional right to state to the jury that other facts about which there is no contradictory evidence are proved. Frank v. Wright, supra; Wright v. Bridges, supra; Ivey v. Hodges, 23 Tenn. 154, 155; Brenizer v. Nashville, C. & St. L. Ry., 156 Tenn. 479, 3 S. W. 2d 1053, 8 S. W. 2d 1099; Haskins v. Howard, 159 Tenn. 86, 97, 16 S. W. 2d 20; Osborn v. City of Nashville, 182 Tenn. 197, 201, 185 S. W. 2d 510, 512."

Applying these rules, there is material evidence in the record to support a finding by the jury of the following facts: Plaintiff was thirty-seven years old at the time of this accident and she was strong and healthy. She was the mother of two children. Defendant negligently ran his automobile into the rear of the automobile in which plaintiff was riding. Plaintiff was pregnant at the time. She suffered a severe nervous shock. Her neck and shoulders became sore and her back was injured. She became very sick and was nauseated. She felt as if she were going to have trouble with her pregnancy. About three days after the accident she began "flooding" and

had a miscarriage. The child about three months old, was passed by her into a slop jar. She was taken to the hospital where she stayed five days. The miscarriage occurred before she went to the hospital.

Taking all the facts and circumstances which tend to support the verdict of the jury and discarding all countervailing evidence, there is abundant evidence in the record to support a finding by the jury of the following conclusions of fact:

(a) Mrs. Gillum was pregnant before the accident.

(b) Mrs. Gillum had a miscarriage.

(c) The negligence of defendant, alleged in her declaration, was the direct and proximate cause of her injuries and miscarriage.

To be sure there is testimony in the record to support a contrary finding by the jury; but the jury, and the trial judge, did not believe the testimony of the witnesses who supported defendant's theory. The jury and the trial judge believed the testimony of the witnesses who supported the theory of plaintiff. In considering this first assignment, we have discarded all testimony which would support defendant's theory of the case, as we must do under the rules. This Court has no constitutional right to disturb a judgment of the trial court, on the question of liability, when that judgment is based upon a jury verdict and the verdict is supported by material evidence. The question of credibility of the witnesses is exclusively within the province of the jury and the trial judge.

(2) By assignments II and III defendant makes the question that a mistrial should have been granted because William Gillum and Bertha Gillum mentioned the question of insurance on the witness stand.

The testimony of William Gillum on direct examination is in narrative form. The record does not show what

question was asked him. The only reference by William Gillum to insurance is in the following excerpt from his testimony:

"Sometime after the accident, I talked to Major Finks and he said something about his insurance company. (At this point in the witness' testimony, the defendant's attorney objected to the witness' answer to the question of his attorney and moved for a mistrial. The Court instructed the jury to disregard any statement of the witness concerning insurance and overruled defendant's motion for a mistrial, to which action of the Court in overruling such motion the defendant duly excepted.)"

In regard to the mention of insurance by Bertha Gillum, the record shows the following:

"Q. Do you know how you happened to be examined by Dr. Griffin?

"Mr. Rassas: Going to object to it as incompetent.

"The Court: I can't see the relevancy, don't answer.

"A. Well the insurance Company.

"Mr. Rassas: I am going to move for a mistrial.

"The Court: Now I told her not to answer. Ask her something else.

"Mr. Rassas: Now the defendant has moved for a mistrial on the basis of the witness' last answer.

"The Court: I overrule the motion.

"Mr. Rassas: We except to it.

"Mr. Bagwell: My reason for asking the question is simply this, she didn't go to him for treatment of her own volition, for that purpose."

There is no evidence that the attorneys for plaintiff made any effort to get the question of insurance before

the jury, or that either of plaintiffs deliberately attempted to do so. At most, they were normal, ordinary statements which any witness might be expected to make. The references to insurance here made were meager. It does not appear that plaintiffs referred to any type of insurance. Clearly, such statements did not require the trial judge to enter a mistrial. Code Section 10654; Seals v. Sharp, 31 Tenn. App. 75, 212 S. W. (2d) 620.

(3) By the fourth assignment, defendant urges that the trial judge should have granted him a new trial because, "plaintiff's attorney for the purpose of prejudicing the defendant and creating suspicions of subversion or improper activities, asked defendant whether his activities were the subject of Senate investigation."

On this question there appears only the following in the record:

"Q. Part of your duties is looking after Officers' Clubs? A. Part.

"Q. That has right recently been the subject of some investigation, has it not? A. I don't think so, sir.

"Q. Don't you know it has been under Senate investigation lately? A. It has been there, and felt to be a necessity.

"Mr. Rassas: I object to that on the grounds that it is irrelevant, incompetent and prejudicial.

"The Court: I don't think that has got anything to do with this lawsuit.

"Mr. Stout: We except to that, withdraw it, don't want it to come out."

We see no prejudicial error in these questions, answers, or remarks. This Court cannot tell whether defendant's work was under investigation, or Officers' Clubs generally. There is no showing of any finding by the Senate

Committee on such investigation, whether it concerned defendant, or whether the report was complimentary or critical. The question was merely asked if a Senate investigation relating in some way to Officers' Clubs had been recently made. An objection to the question was sustained, and the Attorney for plaintiff withdrew the question, and pursued that line of questions no further. A new trial should not have been granted because of this occurrence on the trial.

(4) Assignment No. V is:

"The Court erred in refusing to grant the defendant's motion for a new trial on the ground of improper and prejudicial arguments made to the jury by counsel for the plaintiffs. Counsel for the plaintiffs improperly argued before the jury.

"(a) That the names referred to by defendant's expert witness sounded Russian and therefore were to be discredited.

"(b) That Counsel improperly commented on the picture in evidence as having been made to deceive and that a disreputable photographer had taken·it.

"(c) Counsel misquoted defendant's witness, Dr. Russell, on the pregnancy test."

The only parts of the arguments of counsel for plaintiffs which appear in the record are found on pages 75 and 76 of the record. There is no basis in the record for the question made in Section (a) of assignment V.

 Concerning the picture the attorney for plaintiff argued to the jury:

"Now, they brought a picture in here to show, they wouldn't tell you who made that picture. No they didn't, and would not for their right arm, didn't tell you.

"Mr. Rassas: I am going to object to that, not fair, at this time.

"The Court: That is improper, no question made about the picture.

"Here is something else, that picture is deceiving and it was brought in for one thing, to deceive you. We don't ask for damage to this car. Why did they bring that in? To deceive you, Gentlemen of the Jury.

"Mr. Rassas: We want to make an objection to that.

"The Court: I overrule your objection, he has a right to make his explanations."

This exhibit about which the attorney for plaintiff was making his argument appears on page 33 of the transcript of the record. It only purports to show the injury to plaintiff's car, and the picture does not show the injury very clearly. The injury to plaintiff's car, however, was clearly proved by the witnesses. There is no dispute as to the extent of the injury to plaintiff's automobile. We think the argument of plaintiff's attorney to the jury concerning this picture falls within the bounds of legitimate argument. There was no error in the argument.

▮ Under Section (c) of assignment V, error is assigned that the attorney for plaintiff misquoted the testimony of defendant's witness, Dr. Russell, "on the pregnancy test."

The record shows this:

"Mr. Rassas: I object to misquoting the record and testimony.

"The Court: You have a right, if you want to let the testimony be read to the jury after Mr. Bagwell concludes his argument."

The subject was pursued no further and no effort or request was made to have the evidence read to the jury.

A difference in the minds of the lawyers concerning the testimony of witnesses, expressed in argument of Counsel, is not reversible error under the facts here appearing. The jury heard the witnesses testify; and it was their duty and function, and theirs alone, to find the facts from the testimony of the witnesses. Of course, an attorney should carefully avoid misquoting the testimony; and a deliberate attempt on his part so to do would be error. However, such situation does not exist here.

(5) Assignment VI:

"The Court erred in refusing to grant defendant's motion for a new trial on the ground that the verdict is so excessive as to indicate that it is the result of passion, prejudice or unaccountable caprice upon the part of the jury."

The jury fixed the damage of Mrs. Bertha Gillum at $6,750.

In Olins v. Schocket, 31 Tenn. App. 346, 215 S. W. (2d) 18, 25, this Court summarized the rules of the appellate courts in this jurisdiction relating to a review of the amount awarded by the jury as damages in personal injury cases in these words:

"Our Appellate Courts have heretofore declared that amounts allowable as compensation for personal injuries are not measured by fixed rules of law, but rest largely in the discretion of the jury, and damages in personal injury cases will not be disturbed on appeal, unless the amounts fixed are so excessive as to indicate passion, prejudice and caprice on the part of the jury. National Funeral Home v. Dalehite, 15 Tenn. App. 482; City of Knoxville v. Camper, 21 Tenn. App. 210, 108 S. W. (2d) 787; Municipal Pav-

ing [& Const.] Co. v. Hunt, 22 Tenn. App. 380, 123 S. W. (2d) 843; City of Nashville v. Brown, 25 Tenn. App. 340, 157 S. W. (2d) 612; Town of Clinton v. Davis, 27 Tenn. App. 29, 177 S. W. (2d) 848; Wolfe v. Vaughn, 177 Tenn. 678, 152 S. W. (2d) 631.''

There is no suggestion that the jury in the case on trial was influenced by fraud or corruption. However, a verdict may be so excessive that passion, prejudice or caprice on the part of the jury may be inferred from the size of the verdict alone. International Harvester Company v. Sartain, 32 Tenn. App. 425, 222 S. W. (2d) 854.

The approval of the trial judge of the amount of damages fixed by the jury in personal injury cases is entitled to great weight in the reviewing courts. Carman v. Huff, 32 Tenn. App. 687, 227 S. W. (2d) 780.

In the case on trial Mrs. Bertha Gillum was sore in the neck, shoulders, and back from the injuries she received in the accident. She became steadily worse, and the third day she began ''flooding,'' and was sent to the hospital. She was extremely nervous and crying from the shock. Her condition was such that she had to be put into a special room so she could have absolute quiet. She labored under great physical pain and mental anguish for fear she would lose her baby. She was given sedatives to keep her quiet. Ten months later she was still highly nervous and suffered from pains in her back. As stated, she lost her baby through miscarriage.

It is no small matter for an expectant mother to lose her baby. During her pregnancy, the baby is a part of the mother physically. The mother is faced with a condition which is truly a question of life and death. The effect upon her physical body cannot be described nor explained. She is put on the rack mentally, emotionally, nervously, and physically. We wonder just how an ap-

pellate court would conclude that her physical pain and mental anguish would not be worth $10,000, but would be worth $5,000; that it would not be worth $6,750, but would be worth a substantially smaller amount. Just what norm or yardstick or measuring rod is used by the Court to say that her travail and anguish and physical pain and mental suffering would not support the damages fixed by the jury and approved by the trial judge? The members of the jury, men in this case, are selected for that purpose and do represent a cross section of our society. When they reach a decision on the amount of damages in a personal injury case, and the trial judge approves that verdict, such determination is well-nigh conclusive on this Court when no fraud or corruption is shown. It is true that we sit as a reviewing court and we must see that the amount of the verdict is kept within reasonable bounds. Are we, however, better able to say what is a "reasonable" amount of damages in this case than the twelve good jurors and the trial judge? We think not. We are entirely satisfied with the verdict of the jury and the judgment of the trial court based thereon in this case. As we have often stated, in personal injury cases, each case must, to a large extent, stand on its own facts, and be governed thereby.

Let all assignments be overruled and the judgments of the trial court in the two cases be affirmed with interest and all costs.

Felts and Howell, JJ., concur.