Flossie Mae ELLIS, Plaintiff-Appellant,

v.

WHITE FREIGHTLINER CORPORATION and White Motor Corporation, Defendants-Appellees.

Supreme Court of Tennessee.

July 28, 1980.

Meredith C. Bond, Archie R. Carpenter, Bond, Carpenter & O'Connor, Knoxville, for plaintiff-appellant.

George D. Montgomery, Robert S. Talbott, Kennerly, Montgomery, Howard & Finley, Knoxville, for defendants-appellees.

## OPINION

FONES, Justice.

We granted review in this case to consider the propriety of the Court of Appeals' remittitur of $61,963.92 of a jury verdict approved by the trial judge in the sum of

$260,000 for the wrongful death of Charles E. Ellis, and the application of *Smith v. Shelton*, 569 S.W.2d 421 (Tenn.1978), to the issue of a remittitur in the appellate courts where the jury verdict has been approved by the trial judge.

### I.

Ellis was killed instantly in an accident caused by a defective truck he had purchased from White Motor Corporation. The truck was built by White Freightliner Corporation. The accident occurred in February 1975. Ellis was fifty-five years of age at the time of his death and had a life expectancy of 19.11 years. The stipulated damages to his truck were $21,255.68 and burial expenses were $1,780.40. Thus, the amount awarded by the jury and approved by the trial judge for the pecuniary value of the life of Charles Ellis was $236,963.92.

The Court of Appeals found that the pecuniary value of Ellis' life was $175,000, upon the following analysis of the proof:

"Looking to the proof in the record and the provisions of the statute which sets the amount of recovery, we find the verdict in the case at bar to be excessive beyond the range of reasonableness. Although the deceased's average net income for the last three years before his death was something less than seventy-five hundred dollars per year before income taxes, his highest year's earnings were $8,725.49 before income taxes. This figure multiplied by his life expectancy would be $166,744.11. This amount invested at eight percent interest will produce an income of $13,339.52 per year. Since, under the statute, the amount of recovery is the pecuniary value of the deceased's life to his estate, we think any amount greatly in excess of this, plus actual expenses, is excessive.

We, accordingly, suggest a remittitur of $61,963.92."

### II.

The Court of Appeals said that *Shelton* requires a determination of the upper and lower levels of the range of reasonableness; that in a condemnation case, such as *Shelton*, testimony is available for that purpose but that in personal injury and wrongful death cases it would be a "futile and unrealistic gesture where no testimony as to specific value is involved."

■ We will explicitly articulate what we deemed to be clearly implicit in *Shelton*. If the issue is remittitur *Shelton* requires a determination of the upper limit *only*. If the issue is additur *Shelton* requires a determination of the lower limit *only*. *Shelton* involved an additur, but we prefaced the opinion with the observation that all we said about the scope of review of additurs would apply to remittiturs, and when the context referred to both, the expression "range of reasonableness" was used because it embraces both the upper and lower limits, but obviously, in any given case the issue is either excessiveness or inadequacy, never both.

■ When remittitur is the issue in a personal injury or wrongful death action or in a condemnation case, the question is whether the amount of money awarded is excessive, which requires ascertainment of a figure that represents the point at which excessiveness begins. An excessive verdict is cured by remitting the sum by which the award exceeds that figure. As we recently pointed out in *Pitts v. Exxon Corp.*, 596 S.W.2d 830 (Tenn.1980), the rationale underlying a determination of whether a remittitur is proper was expressed as follows:

"[T]he Court . . . review[s] and correct[s] the judgment rendered to the extent of the excess as to which 'it may very well be said there is no evidence to sustain it,' and that 'while no court has any right to substitute its own estimate of the damages for that of a jury, yet it has the right to determine the amount beyond which there is no evidence, upon any reasonable view of the case, to support the verdict.' " *Id.* at 833–34 quoting *Alabama Great Southern R. R. v. Roberts*, 113 Tenn. 483, 497, 498, 82 S.W. 314, 316 (1904).

This is the rationale undergirding the guidelines of *Shelton*. A reasoned examination of the credible proof of damages leads to a determination of the figure beyond which excessiveness lies and beyond which there is no evidence, upon any reasonable view of the case, to support the verdict.

Of course, if the analysis of the credible proof of damages results in the conclusion that the award is not excessive, there is no requirement that a figure be named beyond which the verdict would be considered excessive, but a determination has been made that the award is within the range of reasonableness.

All will agree that the determination of excessiveness or inadequacy is generally easier in a condemnation case than in personal injury and wrongful death cases, but all result in money judgments, and excessiveness or inadequacy can only be determined by a reasoned examination of the probative value of the credible proof of damages.

█ In *Shelton,* the trial judge had found the jury's verdict inadequate and granted an additur. It follows, that what we said in *Shelton* would not necessarily control the disposition of this case, where the trial judge has approved the award as rendered by the jury. Stare decisis is confined to the particular issue that was directly in controversy in the case cited as precedent. *State ex rel. Pitts v. Nashville Baseball Club*, 127 Tenn. 292, 154 S.W. 1151 (1912).

What then is the effect of the trial judge's approval of the amount of the jury verdict, upon the review by the Court of Appeals on the issue of alleged excessiveness? This Court has not directly answered that question.

In *Koehn v. Cooper*, 193 Tenn. 417, 246 S.W.2d 68 (1951), the trial judge approved a jury verdict of $15,000 for the wrongful death of an eight-year-old girl, and the Court of Appeals affirmed. The concurrence of the "lower courts" was dealt with but not just the concurrence of the trial judge with the jury's award. Justice Gailor, writing for the Court said:

"The amount of the verdict being a question of fact which is normally determined by the jury, the concurrence of the two lower Courts forecloses the issue, and if the concurrent finding is supported by material evidence, it will not be disturbed. *Wolfe v. Vaughn*, 177 Tenn. 678, 152 S.W.2d 631 [(1941)]; *Reeves v. Catignani*, 157 Tenn. 173, 7 S.W.2d 38 [(1928)]." 193 Tenn. at 419, 246 S.W.2d at 69.

In *Reeves* the trial judge had granted a remittitur and the Court of Appeals affirmed the trial judge's action. This Court held that where the "two courts" have agreed on the amount of damages, "our practice has been to treat such concurrence as 'well-nigh conclusive.'" 157 Tenn. at 176, 7 S.W.2d at 39.

In *Wolfe* the trial judge had approved the amount of the jury's award and the Court of Appeals had affirmed. In passing on the issue of excessiveness this Court said:

"[T]he amount fixed by the jury and concurred in by the trial court will be accepted upon appeal unless there is something to show a violation of the discretion. [citation omitted] Where it further appears that the verdict is approved by the Court of Appeals, such concurrence is 'well-nigh conclusive' upon this Court. *Reeves v. Catignani*, 157 Tenn. 173, 7 S.W.2d 38." 177 Tenn. at 688, 152 S.W.2d at 635.

In *Lambert Brothers v. Larkins*, 200 Tenn. 674, 296 S.W.2d 353 (1956), the trial judge found the twenty thousand dollar jury verdict excessive and remitted five thousand dollars. The Court of Appeals affirmed and the majority opinion of this Court adopted the *Koehn* rule quoted verbatim. During the course of the opinion the Court also noted that *Reeves* and *Wolfe* had referred to the concurrence of the "two lower courts" as "well-nigh conclusive." The dissent in *Lambert Brothers* refers to the adoption of the *Koehn* rule as an unequivocal statement and obviously treats the "well-nigh conclusive" language used in *Reeves* and *Wolfe* as a qualified statement of the conclusive rule. Further, the dissent points to the cases of *Grant v. Louisville &*

*Nashville R. R.*, 129 Tenn. 398, 165 S.W. 963 (1914), and *Tennessee Coats Company v. Reese*, 178 Tenn. 126, 156 S.W.2d 404 (1941), as qualifying the conclusiveness of the concurrence of the lower courts with the phrase "in the absence of exceptional circumstances."

In *Murphy Truck Lines v. Brown*, 203 Tenn. 414, 313 S.W.2d 440 (1958), the Court had this to say about the concurrence of the two lower courts:

"Our cases are well nigh unanimous in holding that where the Court of Appeals concurs with the trial judge as regards the verdict, that is, in approving the suggested amount of the remittitur by the trial judge and not otherwise disturbing it, the question is thus practically foreclosed. *Lambert Bros. v. Larkins*, Tenn., 296 S.W.2d 353, citing Section 27–119, T.C.A." 203 Tenn. at 419, 313 S.W.2d at 442.

Two cases in the Court of Appeals have directly dealt with the effect of the trial judge's approval of the jury award. In *Carman v. Huff*, 32 Tenn.App. 687, 227 S.W.2d 780 (1949), Judge McAmis, writing for the Court of Appeals said:

"The amount is primarily for the jury to determine and, it is said, next to the jury the most competent person to pass upon the amount representing fair compensation is the judge who presided at the trial and heard the evidence. *Reeves v. Catignani*, 157 Tenn. 173, 176, 7 S.W.2d 38. The sphere within which the court on appeal may interfere is in cases where the trial judge has failed to keep the jury within reasonable bounds, his concurrence with the jury being entitled to much weight." 32 Tenn.App. at 702, 227 S.W.2d at 786–787.

In *Finks v. Gillum*, 38 Tenn.App. 304, 273 S.W.2d 722 (1954), the trial judge approved the award of the jury and in the Court of Appeals the defendant insisted that the verdict was excessive. The Court of Appeals said:

"The approval of the trial judge of the amount of damages fixed by the jury in personal injury cases is entitled to great weight in the reviewing courts. *Carman v. Huff*, 32 Tenn.App. 687, 227 S.W.2d 780.

. . . . .

When they reach a decision on the amount of damages in a personal injury case, and the trial judge approves that verdict, such determination is well-nigh conclusive on this Court when no fraud or corruption is shown. It is true that we sit as a reviewing court and we must see that the amount of the verdict is kept within reasonable bounds." 38 Tenn.App. at 320, 321, 273 S.W.2d at 730–731.

In *Methodist Hospital v. Ball*, 50 Tenn. App. 460, 362 S.W.2d 475 (1961), the jury's verdict in the sum of twenty-five thousand dollars was approved by the trial judge. The Court of Appeals, in addressing the issue of excessiveness cut the verdict to nineteen thousand dollars. The Court, citing no cases, referred to its statutory authority as follows:

"Under the provisions of T.C.A. Section 27–119 this court on appeal in error has the prerogative and duty to suggest a remittitur if it deems the verdict excessive even though His Honor the Trial Judge may have approved the verdict as rendered by the jury and expressly refused to make a remittitur." 50 Tenn.App. at 490–91, 362 S.W.2d at 488.

*Cohen v. Cook*, 62 Tenn.App. 292, 462 S.W.2d 502 (1962), involved a jury award of five thousand dollars approved by the trial judge. As in *Methodist Hospital v. Ball, supra*, the Court made no reference whatever to the weight, if any, that should be given to the trial judge's approval of the jury award citing only T.C.A. § 27–119 and *Ball*.

In *Southern R. R. Co. v. Sloan*, 56 Tenn. App. 380, 407 S.W.2d 205 (1965), the jury's award for the wrongful death of Ruth Sloan was approved by the trial court. Judge Cooper, writing for the Court of Appeals, Eastern Division, said:

"Bearing in mind the oft-stated truism that the amount of the verdict in a tort action is primarily for the jury to deter-

mine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence, we can not say that the amount awarded as damages for the wrongful death of Ruth Galyon Sloan was excessive. Cf. *Southeastern Aviation, Inc., v. Hurd*, 209 Tenn. 639, 355 S.W.2d 436." 56 Tenn.App. at 391, 407 S.W.2d at 211.

In *Loope v. Goodings Million Dollar Midways, Inc.*, 553 S.W.2d 573 (Tenn.1977), referring only to the verdict for compensatory damages that was approved by the trial judge and affirmed by the Court of Appeals, we said:

"Under these circumstances, the amount of the compensatory award is all but conclusive in this Court, there being no claim of jury misconduct or similar impropriety. *See Lambert Bros. Inc. v. Larkins*, 200 Tenn. 674, 296 S.W.2d 353 (1956); *Murphy Truck Lines v. Brown*, 203 Tenn. 414, 313 S.W.2d 440 (1958)." 553 S.W.2d at 574.

■ Despite the various expressions used to modify the word conclusive, we think the effect of the concurrence of the two lower courts is as stated in *Koehn* —if the concurrent finding is supported by material evidence, it will not be disturbed.

■ The trial judge's approval of a jury verdict invokes the material evidence rule with respect to all other issues of fact and we know of no reason why that rule should not have the same effect when that approval includes the amount of the award. That action by the trial judge means that he has accredited the testimony of the witnesses on the issue of damages and has evaluated the evidence as supporting the amount awarded. Nevertheless, when the question of remittitur is raised, the Court of Appeals has the duty to review the proof of damages and the authority to reduce an excessive award. But when the trial judge has approved the verdict, the review in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not be disturbed.

We affirm these guidelines and caveats in *Southern R. R. Co. v. Sloan, supra*:

"There is no exact yardstick, or measurement, which this court may use as a guide to determine the size of verdicts which would should be permitted to stand in cases of this kind. Each case must depend upon its own facts and the test to be applied by us is not what amount the members of the court would have awarded had they been on the jury, or what they, as an appellate court, think should have been awarded, but whether the verdict is patently excessive. The amount of damages awarded in similar cases is persuasive but not conclusive, and, in evaluating the award in other cases, we should note the date of the award, and take into consideration inflation and the reduced value of the individual dollar." 56 Tenn. App. at 392–393, 407 S.W.2d at 211.

We also reiterate that a finding of excessiveness necessarily involves a determination of the dollar figure that represents the point at which excessiveness begins, and that figure is the upper limit of the range of reasonableness. In this case, as distinguished from *Smith v. Shelton, supra*, all of the evidence in the record that tends to support the amount of the verdict should be given full faith and credit upon appellate review.

### III.

■ In *Memphis Street Railway Co. v. Cooper*, 203 Tenn. 425, 313 S.W.2d 444 (1958), the Court said that the pecuniary value of the life of a decedent is to be,

" ' * * * determined upon a consideration of his expectancy of life, his age, condition of health and strength, capacity for labor, and for earning money through skill in any art, trade, profession, occupation or business, and his personal habits as to sobriety and industry.' *Davidson Benedict Co. v. Severson*, 109 Tenn. 572, 72 S.W. 967." 203 Tenn. at 433, 313 S.W.2d at 448.

Deceased owned and operated his own tractor-trailer. The White Freightliner that he was driving at the time of the fatal

accident was purchased in January 1974, at a cost of $37,734.20. His federal income tax returns for the years 1972, 1973, and 1974 show the following entries respectively: gross income—$41,480.73, $45,723.57, and $45,483.82; depreciation deduction—$8,939.02, $8,939.02, and $17,493.68; adjusted gross income—$5,325.86, $8,725.49, and $8,048.84. The Court of Appeals treated his adjusted gross income as the measure of his earning capacity. Obviously, he had cash flow each year of more than twice as much as his adjusted gross income for tax purposes. We think the jury could have properly found that deceased's real earning capacity was greatly in excess of the adjusted gross income shown on his tax returns.

Mrs. Ellis testified that deceased was a hard-working man in good health who performed all the work around the house, that he was proud of the three big trucks he had owned, and that he maintained them himself. He was a deacon in the church and did not drink. William Charles Ellis, the thirty-nine year-old son of deceased and Mrs. Ellis, gave similar testimony.

In February 1975, the month that Mr. Ellis met his death, the Bureau of Labor Standards cost of living index stood at 157.-2. The jury verdict in this case was rendered in October 1978. The September 1978 index figure was 199.1 indicating a decline in the purchasing power of the dollar of 26.65 percent in the interim following decedent's death. The April 1980 index was 242.6 indicating a decline from February 1975 of 54.43 percent. *See Southern R. R. Co. v. Sloan, supra.*

We are of the opinion that the evidence in this record of deceased's earning capacity, health, strength, and personal habits, evaluated by the appropriate guidelines noted herein, supports the award of $236,-963.92 for the pecuniary value of deceased's life and negates the claim of excessiveness. We reinstate the jury verdict of $260,000 as we are expressly authorized to do by T.C.A. § 27–119.

The judgment of the Court of Appeals is reversed, and the judgment of the Circuit Court of Knox County is affirmed. Costs are adjudged against defendants.

BROCK, C. J., and COOPER, and HARBISON, JJ., concur.