# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
_____

**EDNA FORBES,**

    Plaintiff-Appellee

Vs.                                 Wilson Chancery No. 9325

**WILSON COUNTY EMERGENCY**     C.A. No. 01A01-9602-CH-00089
**COMMUNICATION DISTRICT 911**
**BOARD and W. J. MCCLUSKEY,**

    Defendants-Appellants
_____

FROM THE WILSON COUNTY CHANCERY COURT
THE HONORABLE C. K. SMITH, CHANCELLOR

*ON REMAND FROM THE SUPREME COURT*

W. Gary Blackbum, Blackburn, Slobey, Freeman & Happell
of Nashville, For Appellants

Margaret L. Behm, Anne C. Martin, Dodson Parker & Behm
of Nashville, For Appellee

*REMANDED TO THE TRIAL COURT*

Opinion filed:



**FILED**

**May 20, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

                       **W. FRANK CRAWFORD,**
                       **PRESIDING JUDGE, W.S.**

**CONCURS:**
**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This case, remanded to this Court by the Supreme Court, involves an action brought pursuant to the Tennessee Open Meetings Act and the Tennessee handicap discrimination statute. Plaintiff Edna Forbes (Forbes) alleged that Defendant Wilson County Emergency

Communication District 911 Board and Defendant W.J. McCluskey violated these statutes by conducting a secret meeting in which they decided to demote her because of a handicap.[1] Following a jury trial, the trial court entered judgment on the jury verdicts which found violations of both statutes. Forbes was awarded $65,975.00 in back pay, $38,675.00 in front pay, $250,000.00 damages for humiliation and embarrassment, $50,000.00 for punitive damages, plus reasonable attorney's fees and litigation costs. The trial court denied the defendants' Motion for a New Trial and/or to Alter and Amend.[2] The defendants appealed, presenting issues of liability under both statutes and damages.

In a decision filed September 13, 1996, we held that the defendants violated the Open Meetings Act, T.C.A. §§ 8-44-101 *et seq.* (1993 & Supp. 1997). *Forbes v. Wilson County Emergency Communication Dist. 911*, No. 01A01-9602-CH-00089, 1996 WL 518073 (Tenn. App. Sept. 13, 1996). Finding that the defendants' adverse employment action was void in light of its violation of the Open Meetings Act, we held that there was no demotion, and plaintiff was reinstated to her supervisor position. *Id.* at *4. Therefore, we held that because there was no demotion, plaintiff was not discriminated against "in the hiring, firing, and other terms and conditions of employment" as provided for in T.C.A. § 8-50-103 (A)(1993).[3] Therefore, we pretermitted consideration of the damage awards for discrimination. *Id.*

In an opinion filed April 13, 1998, the Tennessee Supreme Court reversed our decision to the extent that we held that Forbes could not recover for handicap discrimination, and held that "a discriminatory decision made in violation of the Open Meetings Act can serve as the basis for a discrimination suit even though the decision is later declared void for violating the Open Meetings Act." *Forbes v. Wilson County Emergency Dist. 911 Bd.*, No. 01S01-9702-CH-00026, 1998 WL 166142, *2 (Tenn. Apr. 13, 1998). After addressing several issues pretermitted by our holding, the Supreme Court remanded the case to this Court to consider the sole issue of whether the award of $250,000.00 for humiliation and embarrassment was

---

[1] For a more in depth discussion of the facts of this case, *see Forbes v. Wilson County Emergency Dist. 911 Bd.*, No. 01S01-9702-CH-00026, 1998 WL 166142 (Tenn. Apr. 13, 1998).

[2] Counsel for Wilson County also orally moved for a remittitur following the trial, but this request was denied.

[3] Judge Lillard wrote separately to dissent to this aspect of the decision. *Forbes*, 1996 WL 518073 at *4-7 (Lillard, J. concurring in part and dissenting in part).

excessive. *Id.* at *4.

When factual determinations made by a jury have been approved by the trial judge, an appellate court may only set aside these factual findings in the absence of any material evidence in the record to support the verdict. *Jackson v. Patton*, 952 S.W.2d 404, 405 (Tenn. 1997). Thus, an appellate court should be "more deferential" to a trial court that approves a jury's award of damages as opposed to a trial court that modifies a jury's damage award. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 331 n.2 (Tenn. 1996)  In *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 (Tenn. 1980), our Supreme Court said:

> The trial judge's approval of a jury verdict invokes the material evidence rule with respect to all other issues of fact and we know of no reason why that rule should not have the same effect when that approval includes the amount of the award. That action by the trial judge means that he has accredited the testimony of the witnesses on the issue of damages and has evaluated the evidence as supporting the amount awarded. Nevertheless, when the question of remittitur is raised, the Court of Appeals has the duty to review the proof of damages and the authority to reduce an excessive award. But when the trial judge has approved the verdict, the review in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not be disturbed.

*Id.* at 129; *see also Coffey*, 929 S.W.2d at 331 n.2.

Tennessee's handicap discrimination statute, T.C.A. § 8-50-103, incorporates the rights and privileges of the Tennessee Human Rights Act. Under this act, a plaintiff may recover damages for "humiliation and embarrassment." T.C.A. § 4-21-306 (a)(7) (Supp. 1997). We first note that under the statute, humiliation and embarrassment is included as an element of recoverable damages, and the jury in the instant case was specifically instructed to consider this element separately. In *McDowell v. Shoffner Indus. of Tenn., Inc.*, No. 03A01-9301-CH-00030, 1993 WL 262846 (Tenn. App. July 13, 1993), this Court discussed the award of such

emotional damages under the Human Rights Act with regard to a discharged employee.

> Damages for humiliation and embarrassment, if occasioned by the unlawful discharge, may be awarded under the Human Rights Act. The amount is peculiarly within the province of the jury subject to the rule of reasonableness, and necessarily depends on the articulation of personal shame experienced by the discharged plaintiff together with the jury's perception of his sensitivities.

*Id.* at *4.

The proof in the instant case demonstrated that at the time of her demotion, Forbes was fifty-nine years old and recovering from cancer. Forbes testified that when she was notified by letter that she had been demoted, she experienced "a complete mental and emotional breakdown." She asserts that she suffered a brief relapse and immediately visited her physician, who temporarily prescribed medication. Forbes testified as follows:

> When I received this letter [indicating her demotion], I couldn't -- I just couldn't believe what I had received, after working as hard as I had and the type of work I had done for 911, and what they had done to me.
>
> It caused me to -- I can't explain exactly what your body goes through in a situation like this. I immediately had to go to a doctor. I went to the doctor on or about three days. I was under medication so heavy that I didn't hardly know when I was having a meal, and sometimes I didn't even have a meal.
>
> I was just more or less out. I couldn't believe. And I guess my body was still weak from the other situation that I had had. Then all of this on top of it really did cause a lot of pain, a lot of heartache, and I just -- I've never experienced a situation like this before.

Forbes testified that the demotion adversely affected her self-confidence and her ability to make decisions. In addition, Forbes stated that she had difficulty mingling with friends and others in the community, because she was concerned that they would ask her about her job. Forbes testified:

> I got to the point that I couldn't go to church. I could just walk in and walk out. I would -- at one time, the first time I got out, I realized that I needed to leave the house, and I went to Kmart. And when I went to Kmart, I couldn't get out of car [sic]. I had to turn around and come back home. It's still affecting me quite a bit.

Forbes further testified that she suffers from insomnia every night as a result of her demotion. This testimony was reinforced by testimony of Forbes's daughter, Cindy Brown, who also stated that Forbes "would hardly dress or go outside" after her demotion. Brown also testified:

> She just wasn't the same. You know, she always liked to cook and go out and work with her flowers and things like that. And she just sat around just like real -- she just didn't know what to think, I think.

Other witnesses employed by E-911 testified that they were "shocked" when they heard that Forbes had been demoted, but they did not describe Forbes's reaction.

The defendants contend that the jury's award of $250,000.00 for humiliation and embarrassment is excessive,

4

since Forbes did not offer any evidence from a psychiatrist or psychologist regarding her alleged emotional injury. The defendants assert that Forbes did not allege that she was prescribed any long-term medication and that she failed to demonstrate that her life activities were curtailed beyond a short period of time. Thus, the defendants claim that the verdict can only be explained by the jury's sympathy and prejudice.

The defendants cite *Campbell v. Rust Eng'g Co.*, No. 90-5679, 1991 WL 27423 (6th Cir. Mar. 5, 1991). In *Campbell*, a laid-off employee brought a claim against his employer pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, and the Tennessee Human Rights Act. Among other issues, the defendant appealed the magistrate's failure to reduce the jury's award of $68,897.00 for the plaintiff's embarrassment and humiliation under the Human Rights Act. Although the decision does not discuss at-length the plaintiff's emotional damages as a result of his layoff, it mentions that "[t]he evidence used to support the jury's award is plaintiff's testimony that the layoff 'hurt me quite a bit' and that he was embarrassed whenever he saw Rust employees with whom he had formerly worked." *Id.* at *5. The Sixth Circuit noted that:

> Plaintiff suffered no aggravated injuries as a result of his layoff. Rather, the injuries he sustained were merely those normally associated with losing a job, i.e., overall disappointment about not being employed.

*Id.* at *6. Consequently, the Court remanded the case to the trial court with instructions to reduce the award to $10,000.00.

In *Harris v. Dominion Bank of Middle Tenn.*, No. 01A01-9609-CH-00444, 1997 WL 273953 (Tenn. App. May 23, 1997), a discharged employee brought suit against his former employer pursuant to the Human Rights Act, alleging that he was discriminated against because of his age. The jury entered a general verdict against the defendants and awarded the plaintiff $304,254.00, which attributed $100,000.00 to the plaintiff's humiliation and embarrassment injuries.[4] *Id.* at *1, *3. Citing *Campbell, supra,* the defendants argued that the plaintiff was required to "prove more than the humiliation and embarrassment typically associated with losing a job." *Id.* at *2. The Court, however, opined that "we see no indication that the legislature intended to restrict recoveries for humiliation and embarrassment by requiring corroboration or by requiring a higher degree of proof." *Id.*

The only testimony offered by the plaintiff in *Harris* regarding his humiliation and embarrassment injuries was as follows:

> Question by Mr. Ray [counsel for plaintiff]: Now after your termination what was

---

[4] Although the verdict did not expressly delineate that $100,000.00 was attributable to the plaintiff's humiliation and embarrassment injuries, this was deduced from the fact that expert testimony demonstrated that the plaintiff was owed $204,254.00 for lost wages and benefits. *Id.* at *3.

your state of mind like Mr. Harris [plaintiff]? What was your psychological well-being like?

Answer: Well, probably one of the scariest positions I have ever been in because I owed a lot of money on my development in the subdivision. I didn't have any income and it was pretty humiliating to be the age that I was and to suddenly find out you no longer have a job.

Question by Mr. Ray: Did you have a problem sleeping?
Answer: Well, I didn't have a problem sleeping to the best I remember, but I had problems--you know, it's a little embarrassing to get out in public and people think you're still at the bank and you're not.

Question by Mr. Ray: Did you have to tell people, "I've been terminated, I no longer have a job"?

Answer: That's true.

Question by Mr. Ray: How did that make you feel?

Answer: It don't make you feel good.

*Id.* at *4. Finding that the award of $100,000 for these injuries was "clearly excessive," the Court suggested a remittitur to $20,000. *Id.* Citing *Campbell*, *supra*, the Court stated that the plaintiff "did not suffer any aggravated injuries; the discomfort he felt was the same anyone would feel over losing a job." *Id.*

In the instant case, it is uncontroverted that Forbes offered proof demonstrating that she suffered some damages as a result of her humiliation and embarrassment. As in *Campbell* and *Harris*, Forbes testified that the adverse employment action emotionally scarred her. *See Campbell*, *supra*, at *5; *Harris*, *supra*, at *4. Also, as in these cases, Forbes claimed that she was socially embarrassed by the adverse employment action. *See id.* at *4; *Campbell*, *supra*, at *5.

Unlike the circumstances in *Campbell* and *Harris*, Forbes was merely demoted as opposed to terminated. However, Forbes, who was discriminated against based on disability as opposed to age, was recovering from cancer and, thus, would likely be more prone to emotional injuries due to her unique sensitivities. *See McDowell*, *supra*, at *4. Unlike the plaintiffs in the aforementioned cases, Forbes testified that she suffered from a relapse and was prescribed medication as a result of her demotion and that she suffers from insomnia. Forbes, nevertheless, did not proffer evidence that she was receiving any long-term treatment from professionals for her humiliation and embarrassment, nor did she describe many particular instances of discomfort.

Although we believe that material evidence exists by which the jury could conclude that Forbes suffered from humiliation and embarrassment, we find that no material evidence exists to support an award of $250,000.00 for these injuries. *Ellis*, 603 S.W.2d at 129.

After a thorough review of the record, we suggest a remittitur of $175,000.00 for Forbes's humiliation and

6

embarrassment damages, and the judgment is reduced to $75,000.00. As ordered by the Supreme Court, the case is remanded to the trial court for such further proceedings as may be necessary including determination of an award of attorney's fees on appeal. Costs of the appeal are assessed against defendants.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**