MRS. MINNIE BRISCOE, Executrix,

*v.*

ARCH W. ALLISON, et al.

(*Jackson,* April Term, 1956)

Opinion filed April 27, 1956.

116

Martin & Walker and Waldrop, Hall & Winningham, Jackson, for petitioners.

Moss & Benton and Carmack Murchison, Jackson, for respondent.

Mr. Chief Justice Neil delivered the opinion of the Court.

This case arises out of a will contest involving the will of one Fred Hill, deceased, late resident of Madison County, Tennessee.

The contest involved only a single issue, to wit, whether or not the said Hill had revoked his will by tearing it to pieces shortly prior to his death. The issue was tried to a jury in the Circuit Court resulting in a verdict in favor of the contestants. A judgment was entered accordingly.

The proponent, Minnie Briscoe, executrix and beneficiary under the terms of the will, moved the court for a new trial upon numerous grounds, which was overruled, and thereupon was granted an appeal to the Court of Appeals. Upon due consideration of some seventeen assignments of error, that court sustained three and reversed and remanded the case for a new trial. The remaining fourteen assignments were fully considered and overruled. The contestants petitioned this Court for *certiorari*, which was granted. The issues have been orally argued by counsel for the respective parties.

Preliminary to a consideration of petitioners' assignments of error to the action of the Court of Appeals in reversing the case, it is necessary that we state the circumstances attending the alleged revocation of the will.

The issues were made up under the direction of the trial judge, as follows: the proponent filed a short five-line declaration averring that the document, duly executed by Fred Hill, was the last will and testament of the said Fred Hill, and demanded a jury to try the issues. The contestants filed the following plea (we quote from the Court of Appeals' opinion):

"Contestants filed a simple plea by which they denied that said document was the Last Will and Testament of said Fred Hill, deceased, and specifically averring that:

" 'Your contestants, further aver that said paper

writing purporting to be the last Will and Testament of Fred Hill, deceased, was destroyed by the said Fred Hill, on May 8, 1953, by tearing same into several fragments, while he was of sound mind and disposing memory and with the intent of revoking his said will.' "

The paper writing propounded as Fred Hill's will was duly executed on September 22, 1949. This was shortly after the death of his mother. He had been married twice and was divorced from both of his wives. When the will was torn to pieces he was living with Mary Horne Hill, his first lawful wife, and whom he had pretended to remarry. He had expressed dissatisfaction with his will and had, on more than one occasion, threatened to destroy it. He had kept it in a metal box. On the morning of May 8, 1953, while Mary Horne Hill was preparing breakfast the said Fred Hill procured this instrument from the box and while seated at the breakfast table proceeded to tear the will into many parts. This was in the presence of Mary Horne Hill. When she asked him what he was doing he replied that he was doing what he had intended to do for a long time. At the moment he was tearing the will apart a nephew of Mary Horne Hill, one Omar Crowder, Jr., came into the room by chance and inquired of Hill what he was about, to which he replied, "I am tearing my will up." The torn fragments of the will were left on the table, whereupon Mary Horne Hill picked them up and put them in an envelope. The will in its torn condition was placed back in order by application of scotch tape. In this condition it was offered for probate in the County Court.

In the absence of other facts and circumstances the presumption is that the deceased intended to completely destroy the will and thus effectively revoke it.

While it is strongly insisted that deceased was prompted by the destructive act to immediately make another will, there is no evidence whatever of any expression or intention to that effect. Moreover there is no evidence of unsoundness of mind, or fraud upon the testator by anyone, or of undue influence by any person to induce the destruction of this will. There is considerable proof in the record that Fred Hill was an "alcoholic" and often drank intoxicants to excess. But the weight of the evidence shows that his mental faculties were not impaired at the time of the alleged revocation. Dr. Garland F. Jones, who saw Hill on Thursday and Friday morning when the will was destroyed, testified that his mind was normal. To the same effect was the testimony of Mary Horne Hill and Omar Crowder, Jr.

Now adverting for the time to consider the deceased's intention to make another will, we are in full agreement with the following statement by the Court of Appeals on that point:

"We have heretofore set out some of the circumstances, but taking a clear view of all the facts and circumstances does not establish to our minds that deceased at the time the Will was torn, intended to make another Will."

The principal ground of this contest is based upon the proponent's contention that there was no valid revocation because of testator's expressed intention to make another will. In other words proponent relies upon the doctrine known in the law as "Dependent Relative Revocation," citing *Stover v. Kendall,* 41 Tenn. 557, and other authorities. The doctrine is not applicable because there is no evidence that the testator at the time he tore his will to pieces had in mind substituting a new will in its

place. In the *Stover case, supra,* Mr. Justice Caruthers in sustaining the doctrine, quotes the following statement from Sir John Niehall, "that such cancellation, *'being preparatory to the deceased making a new will, and conditional only, was not a revocation.'* " (Emphasis supplied.) His destruction of the will was not a mistake of law or fact, nor was it conditional.

The doctrine of dependent relative revocation has its origin in the guardianship of the law over the improvident disposition of property by testators who had revoked valid wills as the result of some mistake of law or fact. In other words, it is, and has been, the general consensus of opinion that the act of revocation by burning, tearing or defacing is conditional, and that it will not be effective if done as the result of fraud, undue influence or some mistake of law or fact. *Phillips' Pritchard on Wills,* Section 272; *Page on Wills,* Section 479.

Considering now the contention of the proponent that the will was revoked by the testator with the intention to make a new will in one conference he had with J. B. McLemore and his former wife, Mary, about ten months before his death, he expressed his intention to give half of his property to Mrs. Briscoe and half to Mary; in another talk he had with J. E. Barber, about a year and a half before his death, he thought he would give half to his "Uncle Otis" and half to Mary, except $500 to the First Baptist Church. Just how soon after this revocation he expected to execute one or the other of these wills, or some other will, no one can say. In these circumstances is it not more reasonable to conclude that he had abandoned the idea altogether,

In *Phillips' Pritchard on Wills,* Section 272, it is said: "If there is once an unconditional revocation, the

failure of a subsequent testamentary act cannot revive the revoked will.'' See annotations in 62 A.L.R., 1408; 6 L.R.A.(N.S.), 1107; 1 *Jarman on Wills*, 135; In re *Olmsted's Estate*, 122 Cal. 224, 54 P.745; *Page on Wills*, Section 480. The foregoing principle would be equally as applicable where he failed to execute any later will at all.

■ We next consider the alleged error by the Court of Appeals in reversing and remanding the case for a new trial on the ground that the trial judge admitted incompetent testimony. During the progress of the trial the contestants, over the proponent's objection introduced a letter which the testator had dictated to his first cousin, one Mary Blaine Hill, and addressed to a prisoner in the State penitentiary (he had formerly worked for Mr. Hill). The substance of this letter was that he, Hill, ''hoped the boy would soon get out of the penitentiary; that he had a job for him.'' The letter was not signed by the testator, but was signed by Mary Blaine Hill and was in her own language. The Court of Appeals held that this constituted reversible error, and that it was not a harmless error. We think the letter was competent as bearing upon the testator's condition of mind. The entire letter was not read to the jury. But only such parts as Hill had requested, the same being a message from him to the boy confined in the State penitentiary. It was clearly admissible on the authority of *Phillips' Pritchard on Wills*, Section 287. This assignment of error is sustained.

■ The next assignment of error challenges the action of the Court of Appeals in reversing the trial court for alleged error in charging two special requests that were duly tendered by contestants' counsel, as follows:

"At the request of defendant—the contestant—you are further instructed that when a will is traced into the testator's possession, and at his death either cannot be found, or is found mutilated, cancelled or defaced, the presumption in the absence of circumstances tending to show a contrary conclusion, is that the testator destroyed it with the intention to revoke the same." (R. 445, 483, 484.)

"At the request of the contestants you are further instructed that he who seeks to establish a destroyed will assumes the burden of overcoming this presumption by adequate proof and it is not sufficient for him to show that persons interested in establishing intestacy had an opportunity to destroy the will. He must go further and show by facts and circumstances that the will was actually fraudulently or accidentally destroyed against and not in accordance with the wishes and intentions of the testator. The will moreover need not have been in the exclusive custody of the testator in order for this presumption to prevail. Even if it appears that the will was in a repository accessible to the testator and another person it will be presumed that the destruction of the will was done by the testator with intent to revoke." (R. 446, 484.)

We think the foregoing special requests were properly given in the charge by the court. The charge relative to both fraud and undue influence was justified under the facts.

■ There is no substantial difference in the law between fraud and undue influence in so far as one or the other, if exerted, induces the revocation of a will. Regardless of the contention of the proponent as to whether the revocation was due to one or the other the issue was

124

made by the undisputed facts. The special requests were based upon the evidence, and all reasonable inferences and deductions to be drawn therefrom. We think it would have been more confusing than helpful to the jury had the trial judge entered upon a theoretical discussion of the issue by pointing out the technical difference between fraud and undue influence as bearing upon the question of revocation.

"The terms fraud and undue influence are, however, so nearly synonymous that no good purpose can be served by observing the distinction between them." Phillips' Pritchard on Wills, Section 123. The foregoing assignment is sustained. Moreover, if the issue of fraud and undue influence was not an issue in the case, but that revocation was not effective under the doctrine of "Dependent Relative Revocation," to which we have heretofore given consideration, then it was a harmless error.

■ The next assignment of error involves the form of the verdict of the jury, which was in a measure different from the instructions given by the trial judge. A careful examination of the record discloses the fact that the jury at all times agreed that the will was void by reason of the act of revocation. The foreman of the jury had reported a disagreement on several occasions, having had it under consideration for two days. They were manifestly confused as to the form in which their verdict should be reported to the court. There was quite a colloquy between the trial judge and members of the jury. The court had instructed the jury: "Your verdict should be the paper offered is the last will and testament of Fred Hill, or it is not the last will and testament of Fred Hill."

The Court: "Now ladies and gentlemen, have you reached a verdict?

Foreman Dees: "We have. We decide unanimously that the will in question, the torn will, is void and vote to render a decision in favor of the contestants Allisons".

The learned Court of Appeals reversed the case for alleged confusion as above pointed out, making the following statement:

"As we examine this record, this entire proceeding after the jury was charged, using an expression employed by the ancients, is 'confusion worst confounded', and it clearly shows that the jury never at any time returned a verdict in the words suggested by the Court, and if the jury was unable to remember and return its verdict in the simple language the Court had charged it to be returned, there can be no other conclusion arrived at than that the jurors were so confused that they did not understand the real issues of fact involved."

We are not able to agree with the court in this regard. It appears that when the verdict was returned as aforesaid no one made any objection to it. It was accepted by the trial judge and judgment pronounced accordingly.

The trial judge having understood the issues fully and completely and having accepted the verdict of the jury, the only question properly before the Court of Appeals was the legality of the verdict. In other words did the trial judge commit error in accepting and approving the verdict, We think not.

 ■ "It is the duty of the court in construing verdicts to give them the most favorable interpretation and to give effect to the intention of the jurors if that

intention be permissible under the law and ascertainable from the phraseology of the verdict. If after an examination of the terms of the verdict the court is able to place a construction thereon that will uphold it, it is incumbent upon the court to do so.'' Tenn. Procedure in Law Cases, Section 1504, p. 573.

The cases cited in the footnotes fully support the text. See also *Black v. Nashville Banner Pub. Co.*, 24 Tenn. App. 137, 141 S.W.2d 908.

 Peculiarily applicable to the present controversy is the following statement by the Court in *Lowrey v. Brown*, 35 Tenn. 17: ''It is not essential that a verdict should be technically responsive to the issues joined; if in its sense and legal effect it be substantially so, it will suffice''.

We find no error in the record. The petitioners' assignments of error are sustained; the Court of Appeals' judgment is reversed, and that of the trial court is affirmed.