# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## STEPHEN F. WIELGUS, JR., ET AL. V.
## DOVER INDUSTRIES, INC.

**Direct Appeal from the Circuit Court for Rutherford County**
**No. 36566      Robert E. Corlew, III, Chancellor**

---

**No. M1999-00173-COA-R3-CV - Decided May 30, 2000**

---

Appellants in this action are Stephen F. Wielgus, Jr. and wife, Jeanie K. Wielgus. After Mr. Wielgus suffered an on-the-job injury, Appellants sued Dover Industries, Inc., manufacturer of a certain automobile and light truck lift known as the rotary lift, model AP-50H. They also sued James Shumaker, d/b/a Shumaker's Equipment Service, installer and servicer of the particular rotary lift involved in this case. On appeal, Appellants take issue with the jury verdict form because it did not permit the jury to assign a percentage of fault to the unreasonably dangerous condition of the rotary lift which caused Mr. Wielgus' injury. In addition, Appellants claim that the trial court should have granted them a new trial because the jury's verdict is inconsistent. For the reasons that follow, we disagree with Appellants and affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**
**and Remanded**

CAIN, J., delivered the opinion of the court, in which CANTRELL, P.J., M.S., and KOCH, J., joined.

Charles Williams and John B. Carlson, Nashville, Tennessee, for the appellants, Stephen F. Wielgus, Jr. and Jeanie K. Wielgus.

David E. Harvey and Richard E. Spicer, Nashville, Tennessee, for the appellee, Dover Industries, Inc.

## OPINION

### I.      FACTS

Stephen Wielgus was 46 years of age at the time of the accident and had been married to Jeanie Wielgus since 1971, with one daughter born to the marriage. He had been trained as a machinist while serving in the United States Navy and after discharge from the Navy had been employed at a number of jobs, including nine years employment in a Midas muffler shop in Sioux

Falls, South Dakota. In 1985, the Wielgus family moved to Murfreesboro, Tennessee. From September 1991 until the date of the accident in issue on May 8, 1995, Mr. Wielgus continuously worked at a Midas muffler shop in Murfreesboro owned by Dale Colwell. He was the manager of the muffler shop where three technicians were employed, and his duties included working on automobiles. On May 8, 1995, he noticed a technician at the bay near the end of the shop attempting to raise a truck on the Dover rotary lift, model AP-50H, involved in this case. The lift was "jumping" because it was low on hydraulic oil. This automatic lift was an "in-ground" lift with the air/oil tank located in the ground. He first removed the plate covering the air/oil tank. He next undertook to remove the fill plug on the air/oil tank in order to correct the hydraulic oil deficiency. Unfortunately, unknown to Mr. Wielgus, the air/oil tank was pressurized and when he removed the fill plug an explosion occurred driving a pipe from the air/oil tank into his chest and resulting in severe and permanent injuries.

The record shows that Dale Colwell became a Midas franchisee in December 1986. The automotive lift involved in the accident had been manufactured by Dover Industries and sold to Midas International Corporation who in turn sold it to Mr. Colwell. The lift had been delivered to the Midas muffler shop in Murfreesboro on September 11, 1986. In the 1980's, Dover and other manufacturers of automotive lifts had become aware of injuries suffered by persons attempting to remove a fill plug on a pressurized air/oil tank.

The Automotive Lift Institute declined to adopt an industry standard relative to avoiding removal of a fill plug on a pressurized tank. However, Dover designed a vent screw fill plug to help eliminate the possibility of someone inadvertently removing a fill plug from the air/oil tank while the system was still pressurized. When the vent screw on this fill plug is turned three times, the person removing it is able to hear air escaping from the tank if it is still pressurized. This is a signaling device to alert the person to depressurize the tank. The vent screw fill plug, designed by Dover, has a warning cast on it, and is inexpensive to manufacture. It did not become available until October 1987, approximately one year after the automotive lift involved in this accident had been sold to Midas International, and by Midas International to Mr. Colwell. All in-ground automotive lifts sold by Dover since October 1987 have the vent screw plug.

On December 1, 1987, Dover wrote a letter to Dover's regional managers, representatives, parts depots and distributors informing them of the availability of the vent screw fill plug. On October 28, 1988, Dover wrote a letter to its national accounts, including Midas International Corporation, informing them of the availability of the vent screw fill plug. Midas International Corporation sent this information on to its franchisees in a communication dated February 20, 1989. On February 12, 1990, Dover sent another letter to its national accounts, including Midas International Corporation, notifying them that the vent screw fill plug was available and that it should help eliminate the possibility of someone inadvertently removing the fill plug from the air/oil tank while the system was still pressurized. On July 5, 1991, Midas International Corporation sent a marketing memo to its franchisees informing them of the safety features in fill plugs, including the vent screw fill plug. Despite these post-sale developments, no vent screw fill plug was installed on the automotive lift involved in the May 5, 1995 accident, and the old fill plug used in the original 1986 manufacture of this particular lift was still in place.

The original complaint, which was filed on April 29, 1996 against Dover and Shumaker, sought recovery on the separate grounds of products liability and negligence. On June 18, 1996, Dover Industries, Inc. answered the complaint, generally denying liability on either theory of the complaint and asserting in affirmative defense:

28. For fourth affirmative defense, Dover avers and charges that the plaintiff was negligent in not adhering to all warnings concerning the removal of the fill plug and the plaintiff's negligence proximately caused or proximately contributed to at least 50% of any injuries or damages which he received and thereby bars any recovery on his part.

29. For fifth affirmative defense, Dover avers and charges that prior to the plaintiff's accident, it offered fill plugs with vent screws to purchasers of the original fill plugs and specifically to Midas International Corporation for the benefit of its franchise[e]s and if there is any failure to inform the plaintiff or his employer of this new offering of the new fill plug with vent screws, then any negligence would be that of Midas International Corporation.

On September 12, 1996, Plaintiffs/Appellants filed an amended complaint joining Midas International Corporation as a party-defendant and asserting:

(16A) On July 17, 1996, Defendant Dover filed its Answer to Plaintiffs' Complaint filed April 29, 1996. Its fifth affirmative defense (para. 29) provides:

*"Dover avers and charges that prior to the plaintiff's accident, it offered fill plugs with vent screws to purchasers of the original fill plugs and specifically to Midas International Corporation for the benefit of its franchisees and if there is any failure to inform the plaintiff or his employer of this new offering of the new fill plug with vent screws, then any negligence would be that of Midas International Corporation."*

Accordingly, on this information plaintiffs allege that M.I.C. negligently failed to warn it[s] franchisees of the unnecessary and increased danger associated with the use of the original unvented plug or to advise its franchisees to install the revised plugs on their Dover lifts and that plaintiffs, in the exercise of reasonable care, discovered this fact no earlier than July 17, 1996. Plaintiffs further allege that M.I.C. is properly made a party defendant to this action pursuant to T.C.A. §20-1-119.

. . .

(22A) Defendant, M.I.C., is liable because of its negligent failure to warn its franchisees of the unnecessary and increased danger associated with the use of the

-3-

original unvented plug or to advise the franchisees to install the revised plug on their Dover lifts.

On October 8, 1996, Defendant Dover Industries answered the amended complaint again asserting the affirmative defenses involving negligence on the part of Midas International Corporation. On February 4, 1998, Dover Industries amended its answer to the complaint to assert that the actions or inactions of Plaintiff Wielgus' employer Colwell were in whole or in part cause-in-fact of the injuries to Mr. Wielgus. On February 23, 1998, Plaintiffs nonsuited James Shumaker, d/b/a Shumaker's Equipment Service. On August 13, 1998, Plaintiffs entered a voluntary nonsuit as to the defendant Midas International Corporation.

The case was tried as between Plaintiffs/Appellants and Dover Industries on August 24 through August 28, 1998, before a jury which returned a verdict finding Plaintiff Stephen Wielgus 30% at fault, non-party Midas International Corporation 70% at fault, and the defendant Dover Industries 0% at fault. The same jury set damages for Stephen Wielgus at $350,000 and Jeanie K. Wielgus at $80,000. Plaintiffs' motion for a new trial was overruled October 16, 1998, and Plaintiffs timely appealed.

## II.    THE ISSUES ON APPEAL

The first issue presented by Appellants is that "[t]he trial court committed reversible error in failing to use a jury verdict form that permitted the jury to assign a percentage of fault to the unreasonably dangerous condition of the Dover lift." The only other issue arises from Appellants' assertion that "[b]ecause the jury's verdict is inconsistent, the trial court erred in failing to grant Stephen and Jean Wielgus a new trial." These two issues will be considered together.

Each party proposed a jury verdict form, but the trial court denied both proposals and submitted its own jury verdict form to the jury as follows:

> 1.  Considering all of the fault at 100%, what percentage of the total fault is chargeable to each of the following persons?
> A.      Plaintiff Stephen Wielgus                              _____ %
> (0 - 100%)
> B.      Defendant Dover Industries, Inc.                _____ %
> (0 - 100%)
> C.      Non-Party Midas International, Inc.            _____ %
> (0 - 100%)
> Total must equal 100%.
>
> 2.  Without considering the percentage of fault found in Question 1, what total amount of damages, if any, do you find were sustained by the following parties:
> A.      Plaintiff Stephen Wielgus                    $ _____
> B.      Plaintiff Jeanie Wielgus                      $ _____

Appellants do not complain about the charge given to the jury by the trial judge. Rather, they assert that the verdict form used served to confuse the jury and produced a fatally inconsistent verdict.

Primary reliance by Appellants on *Owens v. Truckstops of Am.*, 915 S.W.2d 420 (Tenn. 1996), is misplaced. The *Owens* case was a transitional decision on interlocutory appeal concerning the effect of *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), and is applicable to this case only in respect to its discussion of the continued viability of joint and several liability of manufacturer and seller in products liability actions. Owens had been injured on September 14, 1987, in a restaurant owned and operated by Truckstops when a stool upon which he was sitting broke and he fell. On the last day permitted by the statute of limitations, he filed suit against Truckstops alleging negligence and failure to warn. Truckstops then filed a third party complaint against Vitro Products, Inc. which designed and manufactured the stool and B. Michael Design, Inc. which had sold the stool to Truckstops. Truckstops alleged in the third party complaint both negligence and strict liability in tort. Truckstops further asserted that it was entitled to be indemnified by Vitro and Michael and entitled to prorata contribution from those same parties under the Uniform Contribution Among Tortfeasors Act. Such was the state of the pleadings in *Owens* when *McIntyre* was released on May 4, 1992.

In December 1992, Vitro filed a motion to dismiss the third party complaint of Truckstops on the basis that *McIntyre* had abolished rights of indemnity and contribution among tortfeasors. Truckstops then moved to amend its answer to assert that Vitro and Michael may have caused or contributed to the plaintiff's alleged injuries and damages. Owens, then on June 4, 1993, relying on Tennessee Code Annotated section 20-1-119 (1994), moved to amend the original complaint to add Vitro and Michael as defendants to the original suit.

The amended complaint alleged that Vitro designed, manufactured, and sold the stool to Michael; that Vitro was negligent in the design and manufacture of the stool; and that the stool was a dangerous product. The amended complaint also alleged that Michael sold the stool to Truckstops and installed the stool in Truckstops' restaurant; that Michael was negligent in installing the stool and failing to warn that the stool was dangerous; and that Michael breached an implied warranty of merchantability. Vitro and Michael opposed the motion to amend the complaint on the grounds that section 20-1-119, Tenn. Code Ann., was not applicable to this case and therefore the plaintiffs' cause of action against them was barred by the statute of limitations, laches and estoppel.

The trial court allowed the amendment, and an interlocutory appeal was granted to the Court of Appeals which found that *McIntyre* required that Truckstops' third party claim against Vitro and Michael for contribution be dismissed, but refused to dismiss the claim for indemnity based on breach of implied warranty of merchantability. The Court of Appeals also held that the claim by the plaintiff against Vitro and Michael was barred by the statute of limitations and reversed the order making them defendants pursuant to section 20-1-119.

It was at this stage that the Supreme Court granted interlocutory appeal and undertook an extensive discussion of the effect of *McIntyre* and its progeny on comparative negligence, the statute of limitations, third party practice, liability between joint tortfeasors, strict liability in tort,

indemnity, and breach of implied warranty. The decision of the Supreme Court was thus issued at the pleading stage and before anything was ever tried. As we have observed, its only relevance to the case at bar is the discussion of strict liability in tort under the Tennessee Products Liability Act of 1978. Tenn. Code Ann. § 29-28-101 to 29-29-108 (1980 & Supp.1994).

Appellants Wielgus assert that because of the products liability discussion in *Owens*, the verdict form submitted to the jury should have followed the suggestion of footnote 17 of the *Owens* opinion and allowed for a separate allocation of fault to the defective or unreasonably dangerous product. *Owens*, 915 S.W.2d at 433 n.17. It is clear, however, from the language of the Tennessee Products Liability Act itself that *both* the manufacturer of a dangerous product and the seller of such product cannot be held to strict liability in tort unless, as to the seller, one or more of the conditions set forth in Tennessee Code Annotated section 29-28-106(b)(Supp. 1994) is satisfied. These conditions are that 1) the seller also be the manufacturer of the product or the manufacturer of the part thereof claimed to be defective or 2) the manufacturer of the product or part in question shall not be subject to service of process in the State of Tennessee or service cannot be secured by the long arm statutes of Tennessee or unless such manufacturer has been judicially declared insolvent.

The *Owens* court recognized that its discussion of products liability in this respect at the pleading stage was premature to development of the actual facts of the case on trial when it cautioned in footnote 15: "The strict liability action against Michael cannot be maintained unless one of the conditions of Tenn. Code Ann. § 29-28-106(b)(Supp. 1994) is satisfied." *Owens*, 915 S.W.2d at 432 n.15. The reason that the *Owens* court suggested that the verdict form allow a place for fault to be assigned to the alleged defective product itself was that if one of the conditions of Tennessee Code Annotated section 29-28-106(b) was met by the seller of the product, then the liability of the manufacturer and seller would be joint and several and the percentage of fault for such of the plaintiffs' injuries, as was assessed to the defective product, would be fully recoverable from either the manufacturer, the seller, or both.

The case at bar has been fully tried and a verdict rendered. *Owens* is inapplicable because: 1) Midas International, Inc. has not been sued on grounds of strict liability in tort, and 2) even if such were the case, none of the conditions of Tennessee Code Annotated section 29-28-106(b) has been satisfied as to Midas International, Inc. Since only Dover, Inc. is sued on assertions of strict liability in tort, the rationale articulated in *Owens* for separating on the jury verdict form Dover's alleged fault under strict liability principles from its alleged fault under negligence principles does not exist.

At the time the case was submitted to the jury, fault could have been assessed by the jury in some percentage against Dover, either on strict liability principles or on negligence principles or on a combination of both. Any fault assessed to Dover, however, would be singular and several. The question for the jury under the instructions of the trial court (none of which instructions are challenged on appeal), was whether or not and to what extent, if any, Dover was at fault. The verdict form provided a single line for the percentage of fault, if any, to be assigned to Dover. This was all that was needed. Stephen Wielgus was a party to whom the jury might assign fault based upon his own negligence. The verdict form provided a single line for this purpose. Such is all that was needed for this purpose. The non-party, Midas International, Inc., is the only other person or entity

that could be found at fault under the evidence in the case and under the charge to the jury. A single line appeared on the jury verdict form whereby the jury might assess fault to Midas International based not upon strict liability but upon negligence alone. This was all the jury needed to accomplish this purpose.

The court charged the jury in part:

> Ladies and gentlemen, that should read: Plaintiff Stephen Wielgus seeks to recover from Defendant Dover Industries, Incorporated, under one of two alternative theories, either under the theory of strict liability of the manufacturer or under a theory that the manufacturer was negligent.

> Under the theory of strict liability, the law provides that one who manufactures or sells an unreasonably dangerous product is responsible to the ultimate consumer of the product for physical harm caused to the consumer if the manufacturer is engaged in the business of manufacturing such a product or the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without a substantial change in the condition in which it was manufactured.

> . . .

> Neither the manufacturer nor the seller of a product is responsible for any injury to persons or property caused by the product unless the product is determined to be unreasonably dangerous at the time it left the manufacturer or seller's control. In making this determination, you must apply the state of scientific and technical knowledge available to the manufacturer or seller at the time the product was placed on the market rather than at the time of the injury. You should consider also the customary design, method, standards, and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products.

> A manufacturer is not the insurer of the product who designs or markets and it is not required that the design adopted to be perfect or render the product accident proof or incapable of causing injury nor is it necessary to incorporate the ultimate safety feature in the product. Hence, the departure from the required standard of care is not demonstrated where you simply show that there was a better, safer or different design which would have averted the injury.

The only evidence offered by Appellants on their strict liability claim against Dover was the testimony of the expert witness, Dr. Robert Lott. He testified as to various designs representing technology available "well before '86" available to make this automotive lift safer for its intended use at the time of manufacturer. Dr. Lott was subjected to vigorous cross-examination by the defense and his credibility was a question for the jury. The court charged the jury:

> Usually witnesses are not permitted to testify as to opinions or conclusions.

However, a witness who has scientific, technical or other specialized knowledge, skill, experience, training or education may be permitted to give testimony in the form of an opinion. Those witnesses are often referred to as expert witnesses. You can determine the weight that should be given to each expert's opinion and resolve conflicts in the testimony of different expert witnesses. You should consider the education, qualifications and experience of the witnesses, the credibility of the witnesses, the facts relied upon by the witnesses to support the opinion and the reason used by the witnesses to arrive at that opinion. You can consider each expert opinion and give it the weight, if any, that you think it deserves. You're not required to accept the opinion of any expert.

No objection is made to this correct statement of the law and inherent in the verdict of the jury is its rejection of the testimony of Dr. Lott.

As to the negligence issues, again no objection is made as to the charge to the jury and the trial court properly charged the jury that the burden of proof was upon Plaintiffs/Appellants to establish negligence and proximate cause before fault could be attributed to Dover. The court further charged the jury that the burden of proof was on Dover to prove negligence and proximate cause before fault could be attributed to either Stephen Wielgus or Midas International.

"Courts should provide separate jury instructions for each theory of liability that clearly explain the elements of each claim, thus enabling the jury to consider whether the plaintiff has met its burden of proof with respect to each." *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 (Tenn. 1999). This the trial court has done, both on those issues where the plaintiff had the burden of proof and on those issues where the defendant had the burden of proof.

The verdict form used is not perfect. However, once it is determined that *Owens v. Truckstops of America*, 915 S.W.2d 420 (Tenn. 1996), is not applicable as a predicate for joint and several liability between the manufacturer and the seller, the verdict form used by the trial court is adequate.

> In construing a verdict, courts are to give effect to the intention of the jury.
>
> *Briscoe v. Allison*, 200 Tenn. 115, 290 S.W.2d 864, 868 (1956). *Briscoe* holds that "[i]f after an examination of the terms of the verdict the court is able to place a construction thereon that will uphold it, it is incumbent upon the court to do so." *Id.* Although a verdict may be defective in form, if it substantially defines an issue in such a way as to enable the court intelligently to pronounce a judgment thereon, it is sufficiently certain. *Tennessee Central Ry. v. Scarbrough*, 9 Tenn. App. 295, 299 (1928).

*Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 27 (Tenn. Ct. App. 1993).

The judgment of the trial court is affirmed, and costs are assessed against Appellants,

Stephen F. Wielgus, Jr. and Jeanie K. Wielgus.