# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 1, 2009 Session

## BOBBY GERALD RILEY, and Wife, TANYA RILEY, Individually and as next of kin for HUNTER RILEY
### v.
## JAMES ORR

### Appeal from the Circuit Court for Marshall County
### No. 17708    Lee Russell, Judge

### No. M2009-01215-COA-R3-CV - Filed April 19, 2010

This is an appeal of a jury verdict. The plaintiff was hunting with his son. The defendant was also hunting in the general area, and accidentally shot the plaintiff. The plaintiff filed a lawsuit against the defendant for negligence, and included a claim for negligent infliction of emotional distress on behalf of his son. The parties stipulated as to the defendant's liability, and a jury trial was held on the issue of damages. The jury instructions included instructions on the plaintiff father's mental pain and suffering and the son's emotional injury, but did not separately address the plaintiff father's emotional injury. After deliberating, the jury returned a verdict awarding damages to the plaintiff father as well as an award for the son's emotional injury. The trial court denied the defendant's motion for a new trial and approved the verdict. The defendant now appeals. On appeal, the defendant challenges the sufficiency of the evidence supporting the verdict on several elements of damages, and argues that the inconsistency in the jury instructions on emotional injury necessitates a new trial. We affirm in part, vacate in part, suggest remittitur as to the award for future medical expenses, and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, Remittitur Suggested, and Remanded

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

William Ritchie Pigue and Matthew C. Pietsch, Nashville, Tennessee, for the appellant, James Orr

Walter W. Bussart and Lee Bussart Bowles, Lewisburg, Tennessee, for the appellees, Bobby Gerald Riley, Tanya Riley, and Hunter Riley

## OPINION

### FACTS AND PROCEEDINGS BELOW

On April 8, 2007, Plaintiff/Appellee Bobby Gerald Riley ("Gerald Riley" or "Riley") went turkey hunting with his teenage son, Hunter Riley, on land in Marshall County, Tennessee. At the same time, Defendant/Appellant James Orr[1] ("Orr") was turkey hunting in the same general vicinity.

Firing his twelve-gauge shotgun at what he believed to be a turkey, Orr accidentally shot Gerald Riley, peppering him from head to thigh with shotgun pellets. Some of the pellets bounced off Riley's heavy clothing, but some of the pellets lodged in his right pointer finger, right upper thigh, right temple, left ring finger and right forearm. None of the shotgun pellets struck son Hunter Riley, although some came close.

After firing the shot, Orr approached the scene and discovered that he had struck Gerald Riley. He first checked to make sure that Hunter Riley had not been injured and then retrieved his vehicle and transported Gerald Riley to the hospital. Meanwhile, on Gerald Riley's instruction, Hunter Riley returned home to tell his mother, Plaintiff/Appellee Tanya Riley, what had happened.

At the hospital, Gerald Riley was treated for his wounds.[2] Riley stayed overnight at the hospital and returned home the next day. While recuperating, he missed one week of work. At all times pertinent, Gerald Riley was employed as a warehouse manager at a furniture store and earned ten dollars per hour. Riley used accrued vacation time in order to receive pay for that week.

---

[1]Orr is represented by a different attorney on appeal than the attorney who represented him at trial.

[2]It is unclear whether Riley had any of the shotgun pellets removed in the emergency room. At the time of trial, pellets remained lodged near Riley's right temple and in his right pointer finger, left ring finger, right thigh, and one of his wrists.

On September 12, 2007, Gerald and Tanya Riley (collectively, "the Rileys") filed the instant lawsuit against Orr, asserting claims for negligence. Gerald Riley sought $500,000 in damages for, *inter alia,* medical expenses, loss of earnings, pain and suffering, mental anguish, and physical disfigurement. Tanya Riley sought $50,000 in damages for loss of consortium.

In his answer, Orr admitted that he had unintentionally shot Gerald Riley. Subsequently, the Rileys amended the complaint to add son Hunter Riley as an additional plaintiff, asserting a claim for negligent infliction of emotional distress; they sought $150,000 in damages for this claim. Discovery ensued and the case was set for a jury trial. Prior to trial, the parties stipulated as to Orr's liability, leaving only the issue of damages for trial.

The jury trial was held on January 12, 2009. The jury heard live testimony from Gerald Riley, Tanya Riley, and Hunter Riley, as well as Jennifer Harris ("Counselor Harris"), a licensed counselor who had examined the Plaintiffs prior to trial. The jury also viewed the videotaped deposition of Andrew W. Sisk , M.D. ("Dr. Sisk"), the general surgeon to whom Riley was referred as to removal of the remaining shotgun pellets.[3] Nine exhibits were entered into evidence, including Gerald Riley's medical bills and Dr. Sisk's estimate of the cost for removing the pellets that remained lodged in Gerald Riley's body.

In his testimony, Gerald Riley described the shooting incident, the treatment he received, and how the incident had affected his life. In the emergency room, an x-ray was taken, he said, which revealed that shotgun pellets were lodged near his right temple, in his right pointer finger, his right forearm, his left ring finger, his right thigh, and one of his wrists. Riley said that the emergency room physicians were concerned about the pellet in his right thigh because it was lodged near a main artery. However, the emergency room doctors ultimately referred him to Dr. Sisk for removal of the pellets. In his estimate, Dr. Sisk contemplated removing five pellets that remained lodged in Gerald Riley's body.[4] In his testimony, Riley explained that he missed a week of work while recuperating from his injuries, but used $525 in accrued vacation to avoid missing a pay check.

Prior to the shooting incident, Riley said, he was an active person and had no trouble doing his job, which involved very physical work and heavy lifting. Since returning to work, Riley is able to perform his job, but has to take regular breaks from lifting furniture because the pellet that remains in his wrist triggers "unnerving pain."

---

[3]The record does not contain a transcript of the deposition of Dr. Sisk.

[4]Riley testified that Dr. Sisk would not be able to remove the pellet in his thigh because it was lodged too close to the artery.

His injured leg often cramps up, he said, and he feels "antsy" and is unable to sit for long periods of time without standing up. He testified that he can no longer play guitar for extended periods of time because doing so makes his "hand hurt[] almost like arthritis." Riley commented: "[I]t is kind of aggravating when you are taken from your daily life, and you want to do things that you normally do and you are kept from that." Riley said that the recurring pain caused by the pellets that remain in his body cause him to lose patience more quickly than before the incident, and inject additional stress into his relationship with his wife.

In his testimony, Gerald Riley acknowledged that Dr. Sisk had estimated that removal of the remaining pellets would cost between $1825 to $2250.[5] He explained that he could not afford to have the remaining pellets removed because he is the sole provider for his wife and their five children. Riley said that he is willing "to endure some things" and "go without certain things" to provide for them.

In her testimony, Tanya Riley said that the shooting incident had left her husband "not as patient, [and] kind of distant" from her. She said that this in turn caused her to distance herself from him. She testified that her husband now sometimes withdraws from their family and involves himself in "single activities." As to his lingering pain and physical effects, she said that he can no longer pick up their younger children without pain in his wrist, and walking for long periods of time causes him to complain of pain in his leg. Tanya Riley testified that Gerald Riley sometimes moans and rolls over in bed due to the pain.

In his testimony, son Hunter Riley said that some of the shotgun pellets fired by Orr nearly hit his head, striking the tree he was leaning against at the time. When he saw his father bleeding after being shot, Hunter said, he was frightened, and afterward had nightmares. Corroborating Gerald Riley's testimony on the lingering effects of the incident, Hunter said that his father cannot run as well as he previously could when they play football in the yard, and said that his father gets "agitated a little faster than usual," even if he and his siblings are not "doing anything wrong."

Counselor Harris was the last witness to testify at trial. She met with Gerald, Tanya and Hunter Riley for about an hour, approximately one month before trial. In the meeting, she noted that Gerald Riley manifested several symptoms of stress and anxiety. She explained

---

[5]In his closing argument, the Rileys' attorney noted that there will be hospital and other charges associated with the future removal of the remaining pellets, but acknowledged that they had put no proof in the record as to the cost of such hospitalization and other expenses.

that he did not meet the criteria for a diagnosis under the Diagnostic Statistical Manual,[6] but commented that "there is a significant impairment in his daily living." Harris said that she tries to reserve her opinion to what is stated in the Diagnostic Statistical Manual. Harris declined to estimate the amount of counseling Gerald Riley might want to have, but stated that she charges seventy-five dollars per session.

Regarding Hunter Riley, Counselor Harris testified: "[H]e is dealing with the incident in his own way. His response is not inappropriate. He has chosen not to go into it basically. He has occupied himself. In our session he stressed how he was very busy doing regular teenage activities." She said that Hunter Riley had "not report[ed] any clinically significant impairment."

At the conclusion of the testimony, the trial court charged the jury. The charge consisted of nearly twenty pages of jury instructions. With regard to Gerald Riley's claim for damages for pain and suffering, the jury instruction provided:

>Plaintiff shall be awarded the following elements of damage experienced in the past:
>>Physical pain and suffering
>>Mental or emotional pain and suffering
>>Loss of capacity for the enjoyment of life
>>Disfigurement
>You shall also award compensation for the present cash value of:
>>Physical pain and suffering
>>Mental or emotional pain and suffering
>>Loss of capacity for the enjoyment of life
>>Disfigurement
>reasonably certain to be experienced by a party in the future.
>>Pain and suffering encompasses the physical discomfort caused by an injury. Mental or emotional pain and suffering encompasses anguish, distress, fear, humiliation, grief, shame or worry. . . .

With regard to Hunter Riley's claim for damages for emotional injury, the instruction read:

---

[6]She described the Diagnostic Statistical Manual as follows:

>The Diagnostic and Statistical Manual, 4th Edition, Third Revision, is the manual used primarily by insurance companies to decide on how much treatment a client can have. There are a multitude of disorders ranging from personality to mental, grief, bereavement, all of those things are accounted for in the DSM-IV.

Plaintiff Hunter Riley claims damages for serious or severe emotional injury. A serious or severe emotional injury occurs when a reasonable person, normally constituted, would be unable to adequately cope with the mental stress caused and brought about by the circumstances of the case. Such serious or severe emotional injury must be supported by expert medical or scientific proof.

After the charge was read, the jury retired to deliberate. About an hour later, the jury returned with the verdict form completed as follows:

BOBBY GERALD RILEY, JR.:
| | |
|---|---|
| a. Medical Expenses - Past | $2,405 |
| b. Medical Expenses - Future | $8,000 |
| c. Lost Earning Capacity - Past | $1,000 |
| d. Permanent Disfigurement | $1,000 |
| e. Pain and Suffering - Past | $50,000 |
| f. Pain and Suffering - Future | $1,000 |
| g. Loss of Ability to Enjoy Life - Past | $50,000 |
| h. Loss of Ability to Enjoy Life - Future | $1,000 |
| i. Emotional Injury | $35,000 |
| TOTAL DAMAGES | $149,405 |

TANYA RILEY:
| | |
|---|---|
| j. Spousal damages | $3,500.00 |

HUNTER RILEY:
| | |
|---|---|
| k. Emotional Injury | $1,000.00 |

On January 22, 2009, the trial court entered an order on the jury verdict and awarded a judgment to the Rileys in the amounts listed on the verdict form.

Thereafter, Orr filed a motion for a new trial on the following grounds:

c. The "Proposed Jury Verdict Form" contains the separate category of "Emotional Injury" among the types of damages available for Bobby Gerald Riley. For Mr. Riley, "emotional pain and suffering" were among the elements of "Personal Injury - Pain and Suffering." (TPI Civil 14.10) The "Proposed Jury Verdict Form" was plainly inconsistent with the jury instructions and resulted in the duplication of award.

d. The jury's verdict is beyond the range of reasonableness and should be set-aside if not reduced by this Court's suggestion of *remittitur*.

e. The cumulative affect of these errors require that this Court grant the Defendant a new trial.

After a hearing, the trial court entered an order denying the motion on all grounds. In the order, the trial court found that the "jury's verdict [was] within the range of reasonableness under the evidence" and explicitly approved the verdict. Orr now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Orr raises the following issues:

1) Whether the trial court erred by refusing to suggest a remittitur, or in the alternative, to order a new trial, for a verdict that was so excessive as to indicate passion, prejudice or caprice.

2) Whether the trial court erred by providing the jury with a verdict form that was in conflict with the jury instructions that led to a duplicative damage award.

Since this case was tried by jury, findings of fact may be set aside "only if there is no material evidence to support the verdict." TENN. R. APP. P. 13(d). In determining whether there is material evidence to support the verdict, this Court must "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978); *Black v. Quinn*, 646 S.W.2d 437, 439-40 (Tenn. Ct. App. 1982)). In doing so, this Court is prohibited from reweighing the evidence or making a fresh determination of where the preponderance lies on issues of fact. *Id.* Simply put, if there is any material evidence supporting the jury's verdict, then the findings of fact must be affirmed. *Id.* (quoting *Crabtree Masonry Co.*, 575 S.W.2d at 5).

In contrast, the trial court's conclusions of law are subject to a less deferential standard of review. *Rutherford v. S. Coll. of Optometry*, No.W2008-02268-COA-R3-CV, 2009 WL 5064972, at *4 (Tenn. Ct. App. Dec. 28, 2009), *no perm. app.* This Court reviews the trial courts conclusions of law *de novo* with no presumption of correctness. *Id.* (citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002)).

Regarding remittitur of a jury verdict, statutory provisions outline the authority of both the trial court and this Court. Tennessee Code Annotated § 20-10-102 provides:

> (a) In all jury trials had in civil actions, after the verdict has been rendered and on motion for a new trial, when the trial judge is of the opinion that the verdict in favor of a party should be reduced and a remittitur is suggested by the trial judge on that account, with the proviso that in case the party in whose favor the verdict has been rendered refuses to make the remittitur, a new trial will be awarded, the party in whose favor such verdict has been rendered may make such remittitur under protest, and appeal from the action of the trial judge to the court of appeals.

> (b) The court of appeals shall review the action of the trial court suggesting a remittitur using the standard of review provided for in T.R.A.P. 13(d) applicable to decisions of the trial court sitting without a jury. If, in the opinion of the court of appeals, the verdict of the jury should not have been reduced, but the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the court of appeals for the full amount originally awarded by the jury in the trial court.

T.C.A. § 20-10-102 (2009). Tennessee Code Annotated § 20-10-103 provides further:

> If the judgment of the trial court with regard to a remittitur is affirmed in the court of appeals, so that a party is required to make a remittitur or suffer a new trial, as in the judgment of the trial court, or if, by the opinion of the court of appeals, a further or a larger remittitur is required of the party in whose favor the verdict was rendered, or if after the case was tried in the lower court by the trial judge without a jury, or if after the case was tried in the lower court with a jury and no remittitur was suggested by the trial judge, a remittitur is first suggested or required in the court of appeals, on penalty of granting a new trial, then in each and all of these events the party in whose favor the verdict or judgment has been rendered may make the remittitur under protest in the court of appeals, and take the case, by application for permission to appeal, for review upon that point, to the supreme court.

T.C.A. § 20-10-103(a) (2009).

Thus, the trial court may approve the verdict, or the trial court may suggest remittitur if it determines that the jury verdict is excessive. ***Dunn v. Davis***, No. W2006-00251-COA-R3-CV, 2007 WL 674652, at *9 (Tenn. Ct. App. Mar. 6, 2001), *no perm. app.* (citing ***Coffey v.***

***Fayette Tubular Prods.***, 929 S.W.2d 326, 331 (Tenn. 1996)). We review the trial court's decision on the issue of remittitur under the standard of review set forth in Rule 13(d) of the Tennessee Rules of Appellate Procedure. ***Id.*** (citing ***Coffey***, 929 S.W.2d at 331); ***see Ellis v. White Freightliner Corp.***, 603 S.W.2d 125, 129 (Tenn. 1980) ("The trial judge's approval of a jury verdict invokes the material evidence rule with respect to all other issues of fact and we know of no reason why that rule should not have the same effect when that approval includes the amount of the award.").

However, "when the question of remittitur is raised, the Court of Appeals has the duty to review the proof of damages and the authority to reduce an excessive award." ***Ellis***, 603 S.W.2d at 129; ***see*** T.C.A. § 20-10-103(a) (2009). The authority of the appellate court, however, is more circumscribed than the authority of the trial court with respect to remittitur:

> Where the trial court, in its role as thirteenth juror, has approved a jury verdict, that verdict will not be disturbed where there is any material evidence to support it. We must, therefore, review the evidence in this case to determine whether material evidence supports a finding that the jury award is within the range of reasonableness and not excessive.

***Dunn***, 2007 WL 674652, at *9 (citations omitted).

## ANALYSIS

### *Jury Instructions*

We first consider Orr's argument that the jury was provided with a verdict form that conflicted with the jury instructions, leading to a duplicative damage award for Gerald Riley. Orr emphasizes that mental pain and suffering is a separate and distinct category of damages from emotional injury. He contends that the award to Gerald Riley for both types of damages is erroneous because the jury only received an instruction with respect to his mental pain and suffering, not his emotional injury. Given the inconsistency between the instructions and the verdict form, Orr asserts that the jury had only two options: "(1) to award a type of damage that they were not instructed to consider or (2) to duplicate a damage award previously included under another category."

"Jury instructions must be correct and fair as a whole, although they do not have to be perfect in every detail. Upon review, we read a trial court's instructions to the jury in their entirety and in context of the entire charge." ***Goodale v. Langenberg***, 243 S.W.3d 575, 584 (Tenn. Ct. App. 2007) (citing ***Wielgus v. Dover Indus., Inc.***, 39 S.W.3d 124, 131 (Tenn. Ct. App. 2000)) (citations omitted). With respect to Gerald Riley's mental pain and suffering, the jury

was instructed: "Mental or emotional pain and suffering encompasses anguish, distress, fear, humiliation, grief, shame or worry." In reference to Hunter Riley's emotional injury, the jury was instructed: "A serious or severe emotional injury occurs when a reasonable person, normally constituted, would be unable to adequately cope with the mental stress caused and brought about by the circumstances of the case." Therefore, the jury in fact received appropriate instructions as to both types of damages. We agree that, in light of the distinction made on the jury verdict form, the jury instructions were less than ideal; however, jury instructions must be read in their entirety and need not "be perfect in every detail." *Id*. (citing *Weilgus*, 39 S.W.3d at 131). Under the circumstances of this case, we find no reversible error in the jury instructions and the verdict form.

### *Damage Amounts*

Orr also argues that the trial court erred in approving the jury verdict because the awards were so excessive as to indicate passion, prejudice or caprice, necessitating remittitur or a new trial. Citing ***Grant v. Louisville & N. R. Co.***, 165 S.W. 963 (Tenn. 1914), Orr contends that a court may infer the existence of passion, prejudice or caprice solely from an excessive verdict. In particular, Orr submits that there is no material evidence supporting the following components of the damages awarded to Gerald Riley: $8000 for future medical expenses, $1000 for past lost earnings, $50,000 for past loss of ability to enjoy life, and $35,000 for emotional injury. Additionally, Orr contends that there is no requisite medical or scientific proof supporting the $1000 award for emotional injury to Hunter Riley.[7]

Orr contends that the $8000 award for future medical expenses is not supported by material evidence because the only proof of reasonably certain future medical expenses is Dr. Sisk's estimate that removal of the remaining pellets would cost between $1825 and $2250. In response, Gerald Riley points to Counselor Harris's testimony, asserting that she testified that counseling would help him cope with the stress and anxiety issues he has experienced due to the incident, and that she charges seventy-five dollars per session. He argues that this testimony constitutes a sufficient basis for the jury to make a reasonable estimate of damages.

While "damages need not be proven with mathematical precision, the proof of damages must be concrete and definite enough to enable the trier-of-fact to make a reasonable assessment of the claimant's damages." ***Henley v. Amacher***, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *11 (Tenn. Ct. App. Jan. 28, 2002) (citing ***Provident Life & Accident Ins. Co. v. Globe Indemn. Co.***, 3 S.W. 2d 1057, 1058 (Tenn. 1928); ***Airline Constr., Inc. v. Barr***, 807

---

[7]Orr does not dispute that a personal injury plaintiff in Tennessee may be entitled to an award for these categories of damages, but rather challenges the sufficiency of the evidence supporting the damages in each category.

S.W.2d 247, 274 (Tenn. Ct. App.1990)). The jury is not permitted to speculate because "damages for future medical expenses may not be awarded when the damages are based on speculation or conjecture." ***King v. General Motors Corp.***, No. M2004-00616-COA-R3-CV, 2005 WL 3508016, at \*6 (Tenn. Ct. App. Dec. 22, 2005), *perm. app. denied* Aug. 21, 2006 (citing ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 703 (Tenn. Ct. App.1999)). In this case, the only estimate of Gerald Riley's future medical expenses was provided by Dr. Sisk. Surprisingly, the record contained no proof at all of other expenses related to the removal of the remaining pellets, such as hospitalization.

Although Riley argues that Counselor Harris testified that he needed further psychological counseling, he points to no place in the record supporting this assertion, and we have found none. Harris testified that Gerald Riley did not meet the criteria for a diagnosis. She said only that he had a "significant impairment" and that she charges seventy-five dollars per hour for counseling. She did not say that he would benefit from counseling in the future and specifically declined to estimate the amount of counseling he would have if he chose to do so.[8] We must conclude that the only material evidence in the record on Gerald Riley's future medical expense is Dr. Sisk's estimate, which would support an award of no more than $2250 for future medical expenses.

Orr next contends that the $1000 award to Gerald Riley for past lost earning capacity is not supported by material evidence because Gerald Riley testified that he did not lose any income due to the incident. In response, Riley emphasizes that a loss of earning capacity does not necessarily equate to a loss of wages. He contends that his testimony regarding the physical limitations that the incident imposed on him supports the award.

We agree. "Damages for lost earning capacity are measured not by the amount of the plaintiff's lost wages but by the extent of impairment to the plaintiff's ability to earn a living." ***Graves v. Jeter***, No. W2003-02871-COA-COA-R3-CV, 2004 WL 3008871, at \*4 (Tenn. Ct. App. Oct. 11, 2004) (citing ***Terminex Int'l Co. Ltd. P'ship v. Tenn. Ins. Guar. Ass'n***, 845 S.W.2d 772, 777 (Tenn. Ct. App. 1992); ***Dingus v. Cain***, 406 S.W.2d 169, 171 (Tenn. Ct. App. 1966)). We find that Gerald Riley's testimony supports the $1000 award for lost past earning capacity.

Orr next contends that the $50,000 award for past loss of ability to enjoy life is not supported by material evidence. Orr asserts that the only pertinent proof on this element of damages

---

[8] In response to a question from the Plaintiffs' counsel, Harris dutifully agreed that the opinions she expressed were "within a reasonable degree of medical certainty." This recitation does not mean, however, that the opinions themselves were sufficient to constitute material evidence to support the monetary award of damages.

was testimony that Gerald Riley had diminished endurance for playing guitar and that he could not run as well as he could prior to the incident. In response, Riley points to the testimony that he is an active person and that the injuries from the incident inhibit him on a daily basis.

"Damages for loss of enjoyment of life compensate the injured person for the limitations placed on his or her ability to enjoy the pleasures and amenities of life." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 715-16 (Tenn. Ct. App. 1999) (citing *Thompson v. Nat'l R.R. Passenger Corp.*, 621 F.2d 814, 824 (6th Cir. 1980); *Martin v. S. Ry.*, 463 S.W.2d 690, 691 (Tenn. 1971); *Mariner v. Marsden*, 610 P.2d 6, 12 (Wyo.1980)). "This type of damage relates to daily life activities that are common to most people." *Id.* at 716 (citing *Nemmers v. United States*, 681 F. Supp. 567, 575 (C.D. Ill. 1988); *Dyer v. United States*, 551 F. Supp. 1266, 1281 (W.D. Mich. 1982); *Sweeney v. Car/Puter Int'l Corp.*, 521 F. Supp. 276, 288 (D.S.C. 1981)).

Here, Gerald Riley testified that, since the shooting incident, he has to rest more often when lifting heavy furniture, cannot play guitar nearly as long as he used to, and he cannot sit as long without feeling antsy and experiencing leg cramps. Tanya Riley testified that she has observed that her husband has increased agitation and less patience, that he sometimes rolls over in bed and moans from the pain, and that he is inhibited from picking up his young children because it hurts his wrist. Son Hunter Riley testified that his father cannot run as well when playing with his children.

Clearly this testimony is material evidence to support an award of damages for loss of ability to enjoy life in some amount. The question becomes whether the jury's verdict of $50,000 for this element of damages is excessive, such that a remittitur is warranted.

Considering the evidence supporting the $50,000 award for loss of enjoyment of life, we must determine whether this figure is within the range of reasonableness:

> There is no exact yardstick, or measurement, which this court may use as a guide to determine the size of verdicts which should be permitted to stand in cases of this kind. Each case must depend upon its own facts and the test to be applied by us is not what amount the members of the court would have awarded had they been on the jury, or what they, as an appellate court, think should have been awarded, but whether the verdict is patently excessive.

*Ellis v. White Freightliner Corp.*, 603 S.W.2d 125, 129 (Tenn. 1980) (quoting *S. Ry. Co. v. Sloan*, 407 S.W.2d 205, 211 (Tenn. Ct. App. 1965)). In this case, the trial judge heard the testimony, considered Orr's motion for a new trial, and specifically approved the jury's

verdict. This fact informs our review of whether the appellate court should order a remittitur as to the award for past loss of enjoyment of life:

> [A]n appellate court must not only have great respect for the verdict of the jury, it must likewise take into consideration the fact that the Trial Judge, experienced in observing persons testifying, is in a better position to determine whether a party who has been injured is exaggerating the result of such injury to his body, either from some psychological reaction or purposely in order to influence the jury verdict, . . . and the appellate courts must likewise have great respect for the evaluation of damages fixed by the Trial Judge or approved by him as relates to the verdict.

*Stark v. Yost*, 334 S.W.2d 954, 958-59 (Tenn. Ct. App. 1959). Recognizing that "there is no mathematical rule" in computing damages of this nature, considering the evidence overall, we conclude that the award of $50,000 is within "the upper limit of the range of reasonableness." *Stark*, 334 S.W.2d at 957; *Ellis*, 603 S.W.2d at 129. Therefore, we decline to order a remittitur as to this award.

Orr next contends that the $35,000 award for Gerald Riley's emotional injury is not supported by material evidence because there is no proof of "serious" or "severe" emotional injury. Orr argues that Gerald Riley's testimony about feeling aggravated and impatient cannot support an award for serious or severe emotional injury. In response, Riley contends that the testimony shows he cannot adequately cope with the emotional repercussions of the incident. He points to testimony of Tanya and Hunter Riley that he withdraws from family activities and engages in "single activities." He also points to Counselor Harris's testimony that he exhibits symptoms of stress and anxiety and that the incident has caused "significant impairments" in his daily life.

Recovery for emotional injury may be awarded when the emotional injury is "serious" or "severe." *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996) (citing *Burgess v. Superior Court*, 831 P.2d 1197, 1200 (Cal. 1992); *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 653 (Tex. 1987)). " '[S]erious' or 'severe' emotional injury occurs 'where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.' " *Id.* (citing *Rodrigues v. State*, 472 P.2d 509, 520 (Haw. 1970); *Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983); *Plaisance v. Texaco, Inc*., 937 F.2d 1004, 1010 (5th Cir.1991); *Prosser and Keeton on the Law of Torts* § 54, at 364-65, n. 60).

As noted above, Harris testified that Gerald Riley's emotional condition did not meet the criteria for a condition recognized in the Diagnostic Statistical Manual; her strongest

statement was that Gerald Riley exhibited stress and anxiety that was a "significant impairment." Riley and his family could say only that he exhibited increased agitation and impatience, and more often engaged in solitary activities. Overall, we must conclude that this testimony does not rise to the level of evidence demonstrating a "severe" or "serious" emotional injury. Thus, we must find that the jury's award of $35,000 for emotional injury is not supported by material evidence.

Finally, Orr contends that the $1000 award for Hunter Riley's emotional injury is excessive and not supported by any medical or scientific evidence demonstrating a "serious" or "severe" emotional injury. Orr points to Counselor Harris's testimony that Hunter Riley "did not report any clinically significant impairment." In response, Gerald Riley contends that the proof taken as a whole shows the severity of Hunter Riley's emotional injury.

To recover damages for emotional injury, "a plaintiff who has not suffered a physical injury must demonstrate through expert medical or scientific proof that he or she has suffered a 'severe' emotional injury." *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 528 (Tenn. 2008) (citing *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996)). It is undisputed that Hunter Riley was not struck by Orr's shotgun blast, and thus expert medical or scientific proof must be submitted in support of his claim for emotional injury. Finding none in the record, we must conclude that there is no material evidence supporting the jury's award for Hunter Riley's emotional injury.

## CONCLUSION

In sum, we find no reversible error in the jury instructions and the verdict form, and decline to order a new trial on this basis. As to the jury's award of damages to Gerald Riley for future medical expenses, we find that there is material evidence in the record to support an award of no more than $2250, and therefore suggest a remittitur of $5750. The awards to Gerald Riley and Hunter Riley for emotional injury are not supported by material evidence of "serious" or "severe" emotional injury, and are therefore vacated. The remainder of the jury's verdict is affirmed. The cause must be remanded for further proceedings as to whether the Plaintiffs shall accept the remittitur or have a new trial. *See* T.C.A. § 20-10-103 (2009).

The judgment of the trial court is affirmed in part, vacated in part, and remittitur is suggested, as set forth above, and the cause is remanded for further proceedings consistent with this Opinion. The costs of this appeal are taxed one-half to the Defendant/Appellant James Orr, and his surety, and one-half to the Plaintiffs/Appellees Bobby Gerald Riley and wife, Tanya Riley, Individually and as next of kin for Hunter Riley, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE