IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 14, 2010 Session

## ROBIN R. RIPPY AND DARRELL RIPPY v. CINTAS CORPORATION SERVICES, INC., ET AL.

### Appeal from the Circuit Court for Sumner County
No. 31581-C     C. L. Rogers, Judge

### No. M2010-00034-COA-R3-CV - Filed September 17, 2010

Plaintiff motorist filed suit against defendant motorist and her employer, seeking damages she sustained in a motor vehicle accident in which defendant motorist rear-ended her vehicle. Defendants appeal a jury award asserting there is no material evidence to support the award. Finding the verdict of the jury to be supported by the evidence, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ, joined.

James P. Catalano and Emily B. Vann, Nashville, Tennessee, for the appellants, Cintas Corporation Services, Inc. and Brandy Sefranek.

Jonathan L. Griffith, Nashville, Tennessee, for the appellee, Robin R. Rippy and Darrell Rippy.

**OPINION**

## I. Background

This appeal arises from a motor vehicle accident which occurred on June 5, 2007. On that date, Brandy Sefranek ("Mr. Sefranek" or "Defendant driver")[1] was driving a truck owned by his employer, Cintas Corporation Number 2 ("Cintas" or "corporate Defendant"), when he rear-ended a vehicle being operated by Robin R. Rippy ("Ms. Rippy"). Ms. Rippy and her husband, Darrell Rippy, (collectively, "Plaintiffs") thereafter filed suit in the Circuit

---

[1] The Complaint names Brandy Sefranek as the driver of the truck which struck the plaintiff; however, later pleadings and testimony at trial identified the driver as Brandon Sefranek.

Court for Sumner County against Mr. Sefranek and Cintas[2] seeking damages for injuries Ms. Rippy sustained as a result of the accident and for Mr. Rippy's loss of consortium.

Following a trial, the jury returned a verdict awarding Plaintiffs damages in the amount of $94,637.29, allocating the damages as follows:

Non-Economic Damages:

| | | |
|---|---|---|
| A) | Pain and suffering—past | $12,500 |
| B) | Pain and suffering—future | $15,000 |
| C) | Permanent impairment | $10,000 |
| D) | Loss of ability to enjoy life—past | $15,000 |
| E) | Loss of ability to enjoy life—future | $25,000 |
| F) | Loss of consortium—Darrell Rippy | $1,000 |

Economic Damages:

| | | |
|---|---|---|
| G) | Medical care/services | $14,437.29 |
| F) | Loss of earning capacity—past | $1,700 |

The trial court entered judgment on the verdict on October 1, 2009. Defendants thereafter filed a Motion for New Trial or, alternatively, for Remittitur, which was denied. Defendants filed a timely notice of appeal.

Defendants contend that the trial court made several improper evidentiary rulings that prejudiced the jury. Defendants also assert that the jury's award was not supported by material evidence; alternatively, Defendants contend that the verdict was excessive and, consequently, that the trial court erred in not granting their request for a remittitur.

## II. Discussion

### A. Cintas' Incident Report

Defendants first assert that Plaintiffs' counsel "attempted to confuse and prejudice the jury" by suggesting that Cintas did not comply with discovery requests. In support of this assertion, they cite the following exchange between Plaintiffs' counsel, Mr. Sefranek, Defendants' counsel, and the court:

---

[2] Plaintiffs originally named Cintas Corporate Services, Inc., as a defendant; an agreed order was subsequently entered substituting Cintas Corporation Number 2 as a Defendant.

[PLAINTIFFS' COUNSEL]: Isn't it true that when you completed that form, that you put on the report that you hit that Isuzu Trooper in the back with the front-end of your Cintas Truck?

[MR. SEFRANEK]: Yes.

[PLAINTIFFS' COUNSEL]: And isn't it also true that when you filled out the report on the same day, that you never blamed Mrs. Robin Rippy at all for causing this wreck, did you?

[MR. SEFRANEK]: That is true.

. . .

[PLAINTIFFS' COUNSEL]: And you shared the story of what you just told this jury with your Cintas management; is that correct?

[MR. SEFRANEK]: That's correct

[PLAINTIFFS' COUNSEL]: And isn't it true that you didn't put anywhere on that form that Mrs. Robin Rippy wasn't any way responsible, correct?

[DEFENDANTS' COUNSEL]: Your Honor, can we see a copy of this form that he's referring to. I think he needs to show it to me and show it to my client.

[PLAINTIFFS' COUNSEL]: Your Honor, I'd like to but I asked for it and it was not provided to me.

[DEFENDANTS' COUNSEL]: Well, then how does he know what's on the form. Do we just get to stand up in court and make things up? I object to everything he just said and have it stricken from the record.

A full reading of the testimony, the interplay between counsel, and the ruling of the court, however, shows that, while Mr. Sefranek testified that he provided Cintas with a written, internal incident report regarding the accident with Ms. Rippy,[3] no accident report

---

[3] Prior to the testimony quoted in the text, Mr. Sefranek testified as follows:

(continued...)

was introduced into evidence. The court ruled in response to the objection quoted above as follows:

> It will be up to the witness rather than the lawyers to testify to what they put into the report. There is no requirement that he has to have the report. So far he's testified as to what he's done. So overrule as far as having to produce the report at this point.

This is the appropriate response to the objection raised inasmuch as the witness was testifying from his memory rather than a document. Moreover, Mr. Sefranek was not examined by counsel for Defendants regarding the accident report and the record does not reflect that Defendants sought any further relief to the extent they felt counsel for Plaintiffs was improperly withholding information. Furthermore, we find Defendants' complaint regarding Plaintiffs' counsel is not supported by the record and is without merit.

## B. Photographs of Cintas Vehicle

Defendants argue the trial court erred, during the course of the testimony of Ms. Rippy, in admitting a photograph of a Cintas vehicle on the basis that the vehicle pictured was "neither the vehicle involved in this accident nor a vehicle of similar make and model" and that, consequently, the pictures would confuse the jury. This contention is without merit.

---

[3](...continued)
[PLAINTIFFS' COUNSEL:] Now, your company has accident reporting procedures; is that correct?
[MR. SEFRANEK:] They do.
[PLAINTIFFS' COUNSEL:] Is that something that you're taught [sic] by Cintas to complete?
[MR. SEFRANEK:] Yes.
[PLAINTIFFS' COUNSEL:] And is that something that's done after every accident that occurs while you're driving for Cintas?
[MR. SEFRANEK:] Yes.
[PLAINTIFFS' COUNSEL:] And do those reporting—accident reporting procedures include giving a statement to Cintas Corporation, a written statement?
[MR. SEFRANEK:] You fill out the accident report. Yeah, that's a written statement.
[PLAINTIFFS' COUNSEL:] Is that a Cintas form?
[MR. SEFRANEK:] Yes.
[PLAINTIFFS' COUNSEL:] And did you do that in this specific incident on the same date of this wreck?
[MR. SEFRANEK:] Yes.

We afford the trial court wide discretion with regard to the admissibility of evidence, and we will not overturn the trial court absent a finding that the trial court abused its discretion. *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d 849, 857 (Tenn. Ct. App. 1999). A trial court abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

When this matter was first raised, prior to the taking of testimony in the case, the court withheld ruling, stating:

> I tell you what I'm going to do, I'm not going to make a ruling on that at this point. You will be required to lay the proper foundation as it was the same or similar. And if an objection is made, we'll see if you do it. . . . The mere fact that this is a different truck, I can't stop you at this point how different it may be or if there's other damage or something on that truck . . .

During the course of Ms. Rippy's testimony, she stated the photographs depicted a truck "very similar" to the truck that collided with her vehicle. When asked whether there were any differences between the truck depicted in the photograph and the truck that rear-ended her vehicle, Ms. Rippy responded, "I don't see anything different about it. It's a big, white, industrial looking van truck that has a Cintas red and blue sign on it." The court admitted the photographs, instructing the jury that ". . . it is not the truck involved. It's just one similar according to this witness."

The court properly admitted the photographs. The mere fact that the truck in the photograph was not identified as the same truck that stuck plaintiff's vehicle does not make the photograph inadmissible. Ms. Rippy was not cross-examined in this regard and Defendants offered no proof to contradict it or to show a different truck. To the extent Defendants took issue with the photograph, it was incumbent upon them to either establish a firm basis to exclude the pictures or introduce proof on their own. This they failed to do.

*C. Hearsay*

Defendants argue that Plaintiffs improperly introduced hearsay testimony of a police officer who responded to the accident. The references to asserted hearsay cited in Defendants' brief include citations to arguments of counsel and the following testimony of Mr. Sefranek:

Q. Let me just ask you straight up, on the day of this wreck, you say you're sorry, you done an incident report and you tell Cintas its your fault and Mrs. Rippy is not at fault. And you tell the police officer basically the same thing. And then your interrogatories seem to be different, wouldn't you agree?

A. I don't remember saying anything to anybody. I never told Cintas this is my fault. I just told Cintas and the police officer what happened. Both of them asked me what happened and I told them both what I just told the jury.

As an initial matter, the arguments and statements made by an attorney throughout the course of trial are not evidence. *Oakes v. Oakes*, 235 S.W.3d 152, 158 (Tenn. Ct. App. 2007) (citing *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988)). Attorneys do not testify, thus their statements cannot be considered hearsay. Upon Defendants' objection to statements made by Plaintiffs' counsel during opening statement, the trial court properly stated, "Let me say again, that is an opening statement. They are going to tell you their version of the story but it is not proof. This is what they hope to conclude from the facts. . . ." Defendant's argument that the statements of counsel during opening and closing statement constituted hearsay is without merit.

Likewise, we find the testimony of Mr. Sefranek did not constitute hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Mr. Sefranek did not repeat the statements of an out of court declarant but, rather, stated only to whom he made a report about the accident. Moreover, Defendants made no objection to any portion of the testimony related to the police officer. An objection to the admission of evidence must be made at trial or the matter will not be considered on appeal. *See Morgan v. Duffy*, 30 S.W. 735 (1895). Therefore, we find Defendants' contention as to Mr. Sefranek's redirect examination is waived, and Defendants' argument as to statements of counsel are without merit.

### D. Jury's Award of Damages

We next turn to the question of whether the trial court erred in denying Defendants' motion for remittitur or in failing to grant a new trial. Defendants argue the damages awarded for future pain and suffering, permanent impairment, future loss of the ability to enjoy life, and lost wages were not supported by the evidence and were so excessive as to infer passion, prejudice, or caprice on the part of the jury.

Inherent in the trial court's denial of a remittitur was its determination that the amount awarded by the jury was not excessive and was supported by the evidence. Similarly, our

resolution of the issue as presented is dependent upon whether the evidence supports the verdicts. *See* Tenn. R. App. P. 13(d); *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125, 129 (Tenn. 1980).[4]

Non-pecuniary losses for future pain and suffering, future loss of enjoyment of life, and permanent impairment "are not easily quantified and do not lend themselves to an easy valuation." *Duran v. Hyundai Motor America, Inc.*, 271 S.W.3d 178, 210-11 (Tenn. Ct. App. 2008). "[D]etermining the amount of these damages is appropriately left to the sound discretion of the jury . . . ." *Id.* Furthermore, it is not the appellate court's "prerogative to determine whether the award strikes them as too high or too low." *Id.* at 211. "Rather, the reviewing court must review the evidence in the record 'to determine whether material evidence supports a finding that the jury award is within the range of reasonableness and not excessive.'" *Id.* (quoting *Dunn v. Dunn*, No. W2006-00251-COA-R3-CV, 2007 WL 674652 at *9 (Tenn. Ct. App. Mar. 6, 2007)).

Defendants contend that the jury's award of $15,000 for future pain and suffering was not supported by material evidence because Ms. Rippy testified she can still engage in the activities she pursued prior to the accident. Defendants further cite Dr. Schoettle's testimony that he did not consider Ms. Rippy to be a surgical candidate nor did he anticipate Ms. Rippy would require any future medical treatment.

"Pain and suffering encompasses the physical and mental discomfort caused by an injury," and includes the "'wide array of mental and emotional responses' that accompany the pain." *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 715 (Tenn. Ct. App. 1999) (citing *McDougald v. Garber*, 504 N.Y.S.2d 383, 385 (N.Y. Sup. Ct. 1986)). With regard to her continued pain and suffering, Ms. Rippy testified, "my neck pretty much hurts every day." In addition to her neck pain, Ms. Rippy testified that both of her shoulders continue to cause her pain; as a result, she takes pain medication on a daily basis. Dr. Schoettle, a neurosurgeon who treated Ms. Rippy following the accident stated, "I felt it was likely she would continue to have intermittent symptoms of mild to moderate degree of pain with her neck." Ms. Rippy's testimony describing the persistent pain in her neck and shoulders and Dr. Schoettle's testimony constitutes material evidence to support the jury's award for the future pain and suffering Ms. Rippy will endure as a result of the car accident with Defendants.

---

[4] "The trial judge's approval of a jury verdict invokes the material evidence rule with respect to all other issues of fact and we know of no reason why that rule should not have the same effect when that approval includes the amount of the award." *Ellis*, 603 S.W.2d at 129.

Defendants take issue with the jury's award of $10,000 for Ms. Rippy's permanent impairment. Defendants suggest an award of this amount is excessive considering Ms. Rippy "admitted that she is not significantly or severely hindered in her every-day life." Defendants also argue Ms. Rippy's five percent impairment rating does not support the value of the jury's award.

Damages for permanent impairment of a physical function are awarded to redress an "injury from which the plaintiff cannot completely recover." *Overstreet*, 4 S.W.3d at 715. Dr. Tigges, a chiropractor who treated Ms. Rippy for her injuries, testified that Ms. Rippy would endure negative, persistent implications from her injury. In particular, Dr. Tigges stated:

> She can probably expect that her neck is going to get stiffer, still going to continue to ache. The cervical degeneration she had may end up being accelerated because of the injury, because now her neck is stiff, she's not moving her neck the way she should be, which can speed up that process.

Both Dr. Tigges and Dr. Schoettle testified that Ms. Rippy would have a five percent impairment rating for the remainder of her life, and no medical intervention could take the impairment away. In addition, Ms. Rippy testified that she was no longer able to do any overhead or repetitive type of work. The five percent permanent impairment rating, coupled with Dr. Tigges' testimony regarding the permanent implications of the accident, is material evidence supporting the jury's award of damages for permanent impairment.

Defendants assert the jury's award of $25,000 for Ms. Rippy's loss of the ability to enjoy life in the future was not supported by material evidence because Ms. Rippy testified she is able to participate in the same activities she participated in prior to the accident.

"Damages for loss of enjoyment of life compensate the injured person for the limitations placed on his or her ability to enjoy the pleasures and amenities of life." *Overstreet*, 4 S.W.3d at 715-16 (citing *Thompson v. Nat'l R.R. Passenger Corp.*, 621 F.2d 814, 824 (6th Cir. 1980)). Ms. Rippy testified that she has difficulty sleeping and can rarely sleep through the night due to her pain. She testified it is difficult for her to engage in the household chores she formerly enjoyed, such as sweeping, weeding, mopping, gardening, and any other activity that requires the use of her upper body muscles. While she can do many of the activities she did prior to the accident, if she does engage in these activities, the next day is "rough." When asked whether the accident affected her relationship with her husband, Ms. Rippy stated:

Yes, it did put a strain on our relationship. And today it still does somewhat. I mean, when you've just been married seven months, you don't expect your wife to stop hugging you all of a sudden. And even today when I try to hug him, it hurts my neck, it hurts my shoulders.

Ms. Rippy's testimony regarding the impact of the accident on her ability to enjoy the activities and pleasures of life constitutes material evidence supporting the jury's award of damages.

Defendants contend the jury's award of $1,700 for past loss of earning capacity is improper because Plaintiffs did not produce documentary evidence to support her claim for lost wages. Defendants failed to provide any authority indicating plaintiffs are required to produce documentary evidence of lost wages, and we have found none.

Ms. Rippy testified she had to miss approximately 134 hours of work to attend physical therapy sessions and, at the time of the accident, she earned $13.04 per hour. Ms. Rippy testified she incurred a loss in wages of "approximately $1,700." Ms. Rippy's testimony is material evidence supporting the jury's award for past loss of earning capacity.[5]

*E. Total Amount of Jury's Award*

Defendants alternatively contend that the amount of Plaintiffs' recovery should be limited to $40,637.00—the amount of damages Plaintiffs' counsel requested in both opening and closing statements. In support of this argument, Defendants assert that Plaintiffs' counsel's request constituted a verbal amendment to the *ad damnum* of the Complaint, and consequently, the jury award could not exceed the amount requested. Defendants' argument is without merit.

The complaint requests a "judgment against [Defendants] for compensatory damages for a fair and reasonable sum to be determined by a jury of twelve (12) peers under the law and the evidence." Just as arguments of counsel are not evidence, arguments do not serve

---

[5] The charge to the jury relative to loss of earning capacity included the following:

Loss of earning capacity is the value of earning capacity that has been lost in the past as a result of the injury in question. It is not the loss of time or actual earnings that make up this item of damages, but the loss of the ability to earn. The loss of the ability to earn money may include, but not be limited to, actual loss of income.

To the extent the instruction was ambiguous, no objection was made at trial and no issue is raised on appeal that the jury was not properly instructed or permitted to make an award for lost income.

to comply with Rule 15, Tenn. R. Civ. P., which requires consent of the adverse party or leave of court to amend a pleading. Here, Plaintiffs did not seek to amend the Complaint to set forth a specific *ad damnum* and the record does not reflect any effort by Defendants to limit the Plaintiffs' demand. Counsel is given wide latitude in argument and there is nothing in counsel's argument that operates to place a cap on the jury's award.[6] *See McCrory v. Tribble*, No. W2009-00792-COA-R3-CV, WL 1610587 at *6 (Tenn. Ct. App. April 22, 2010) (citing *State v. Brown*, No. W2008-01866-CCA-R3-CD, 2010 WL 22812, at *6 (Tenn. Crim. App. Jan. 5, 2010) ("Tennessee courts have traditionally afforded counsel wide latitude in the content of their closing argument to the jury."). The total sum awarded by the jury was within the scope of the pleadings, consistent with the instruction of the court and supported by the evidence.

## III. Conclusion

For the reasons set forth above, we find no reversible error in the trial court's evidentiary rulings and we affirm the jury's verdict of $94,637.29.

_____
RICHARD H. DINKINS, JUDGE

---

[6] In his opening argument counsel stated:

At the end of the day we"ll be asking for a verdict in the amount of $40,637. And I'm going to explain to you exactly how we arrive at that figure. There's no science to this. And I will give you a road map. You can accept it, you can reject it, you can go higher, you can go lower. That's your prerogative. You have the power.